# GARDNER v. MICHIGAN CENTRAL RAILROAD COMPANY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF MICHIGAN.

No. 72. Argued November 7, 1893. — Decided November 27, 1893.

Plaintiff sued defendant in a Circuit Court of the State of Michigan on the cause of action for which this suit is brought. Verdict and judgment were in plaintiff's favor in the trial court. This judgment was reversed by the Supreme Court of the State, and a new trial was ordered. When the case was remanded plaintiff voluntarily withdrew his action and submitted to a nonsuit which was not to prevent his right to bring any suit in any court. He then commenced this action in the Circuit Court of the United States. The defendant contended (1) that plaintiff was estopped from bringing this action by the judgment in the state court; (2) that the record showed no negligence on the part of the defendant, and that a verdict should have been directed in its favor. The Circuit Court overruled the first contention of the defendant, but accepted the second, and directed a verdict for defendant. *Held,*

(1) That the plaintiff was not estopped from bringing this action by the proceedings and judgment in the state court;

(2) That the evidence in regard to negligence was conflicting, and the question should have been left to the jury under proper instructions.

The question of negligence in such case is one of law for the court, only when the facts are such that all reasonable men must draw the same conclusion from them: or, in other words, a case should not be withdrawn from the jury unless the conclusion follows as matter of law that no recovery can be had upon any view which can be properly taken of the facts the evidence tends to establish.

THIS was an action brought in the Circuit Court of the United States for the Western District of Michigan by Frederick Gardner, a citizen of the State of Indiana, against the Michigan Central Railroad Company, a corporation of the State of Michigan, to recover damages for injuries alleged to have been inflicted by reason of the negligence of the defendant in causing, and allowing to remain for some time prior to the accident complained of, a hole in the planking of the cross-

ing of a thoroughfare near its station house in Niles, Michigan, known as Fifth Street, contrary to its duty in that behalf, whereby the plaintiff was injured without negligence on his part; and, also, in ordering the plaintiff, who was a night switchman at that station, to do certain coupling and uncoupling of cars, out of the line of his employment as switchman and more dangerous.

Upon the trial before the District Judge, the evidence tended to show that Fifth Street in the city of Niles crossed the defendant company's tracks, of which at this crossing there were, besides the main track, several others, occupying a large portion of defendant's right of way; that the defendant's station house, freight house, and other depot buildings were located at this point; that thirty-two feet of the crossing were planked between the tracks by the defendant; that near the southeast corner of the planking, and about twelve or fifteen feet therefrom, stood a switch, which moved the track south, in adjusting it for the passage of trains; and that a month or so before the injury to the plaintiff, a car wheel had struck the end of a plank next to the rail of the track, by reason of the switch not being properly adjusted, making a hole in the surface several inches in length and width; that it was the duty of the yardmaster and roadmaster of defendant to keep the roadbed and crossings in good condition and repair; that the yardmaster must have known of the fracture of the plank; and that other employés had actual knowledge of its existence, but that plaintiff, who worked only during the night, had not been informed and did not know thereof. The yardmaster testified that he did not remember "seeing any bad spots" in the planking; "not to amount to anything;" "there might have been a car off and the ends of the plank broke down a little; there might have been, but nothing that I would think would be dangerous."

The evidence further tended to show that the yardmaster of the company had the control and management of the switches and of the work belonging to the "making up trains;" that in 1881 he employed the plaintiff to tend switches at night; that prior to March, 1882, he had ordered

him not to engage in the work known as making up trains, which included coupling and uncoupling cars, and afterwards and prior to May 16, 1882, the supply of help for making up trains in the morning not being equal to the demand; he required the plaintiff to assist in such making up, including coupling and uncoupling. It appeared that the yard at night was in charge of a yard foreman or assistant yardmaster, and the evidence tended to show that on the 16th of May the plaintiff, acting in obedience to the orders of such assistant yardmaster, attempted to uncouple cars just before he received his injury; the hole in question being hidden under the car being uncoupled; that there was a down grade sloping west at the place where the plaintiff was, and the cars, according to necessity and general usage, were in slight motion at the time, and that as the plaintiff was stepping out from between the cars one of his feet was firmly caught in the hole, and the injuries inflicted in consequence.

On the trial of the cause it appeared that the plaintiff had originally commenced suit in the circuit court for the county of Berrien, Michigan, and that the cause had there been tried and resulted in a verdict and judgment in favor of the plaintiff, whereupon the defendant brought error to the Supreme Court of the State, which reversed the judgment and granted a new trial, and counsel for defendant gave in evidence the printed record used in said Supreme Court, together with a copy of the opinion of that court in the premises, and also a certified copy of the judgment in the state circuit court in obedience to the mandate of the Supreme Court, and it was agreed by the parties that, on the filing of its opinion, the Supreme Court entered judgment in the usual form, reversing the judgment of the court below and granting a new trial in the suit. The judgment of the state circuit court recited that, upon the filing of a certified copy of the judgment of the Supreme Court reversing the prior judgment and vacating the verdict of the jury, and the placing of the cause upon the calendar for trial, the plaintiff came by his counsel and voluntarily withdrew his suit, and submitted to a nonsuit therein, wherefore, "on motion of said plaintiff, by his said attorneys, it is

ordered by the court, now here, that the said plaintiff be, and is hereby, nonsuited, but not to prevent the right of the plaintiff to bring any suit in any court," and for costs in favor of defendant. The opinion of the Supreme Court is reported in 58 Michigan, 584.

The headnotes are as follows:

" A switchman who had been strictly cautioned against having anything to do with coupling cars tried to uncouple some while the train was moving, and had his foot caught where the planking had been for some time slightly broken, though the defect had not been seen by him as yardman and the railroad company had no notice of it. *Held*, that he could not recover for the injury resulting to him.

" 2. A railroad employé takes the ordinary risks of the work for which he hires; and if the company has used proper diligence in choosing competent servants it is not liable in damages for an injury to one of them caused by the carelessness of another."

The case in the Circuit Court having gone to the jury resulted in a verdict in plaintiff's favor, and a motion for new trial was made by defendant, which was heard before the Circuit and District Judges. The Circuit Judge was of opinion that upon the record there was no negligence on the part of the company, and that the case should have been withdrawn from the jury and a verdict directed for the defendant. The District Judge thought otherwise, but a new trial was granted, and the case being retried upon the same evidence, the District Judge, accepting in that regard the views of the Circuit Judge, instructed the jury to find for the defendant, which was done, and judgment having been entered, the cause was brought to this court by writ of error.

*Mr. Edward Bacon* for plaintiff in error.

*Mr. Ashley Pond* for defendant in error.

On behalf of the defendant in error I contend and submit: (1) That the ruling of the Circuit Judge that, under the circumstances, the judgment of the Supreme Court of the State

constituted a perfect defence to the action, is correct, and that the judgu~nt below must, for that reason, be affirmed; and (2) that, i..respective of the effect of the judgment of the Supreme Court of the State, the plaintiff was not entitled to recover upon the facts which the evidence tended to prove, and hence, for that reason, there was no error in withdrawing the case from the jury, and the judgment below must be affirmed.

I. Let it be understood at the outset that I do not contend that the judgment of the Supreme Court of the State, resulting as it did in the order for a new trial of the action in the circuit court of the State, and followed as it was by a discontinuance of that action, operated to bar the plaintiff from bringing, in another court, or, indeed, in the same court, another action against the defendant to recover damages on account of the injury he suffered by the accident described in his said action in the state court.

What I do contend is that the said judgment of the state Supreme Court precludes the plaintiff from successfully maintaining a new action against the defendant upon evidence tending to prove only the same state of facts which the evidence before the Supreme Court of the State tended to prove. "It is an undoubtedly settled law that a judgment of a court of competent jurisdiction upon a question directly involved in one suit, is conclusive as to that question in another suit between the same parties." Per Field, J., in *Russell* v. *Place*, 94 U. S. 606, 608.

It is certain that the state Supreme Court considered and determined the question which arose between the parties. It is true that the formal order, as entered, does not upon its face show that such question was determined. But that fact was properly shown by the opinion of the court which was introduced in evidence. That evidence *aliunde* the record was admissible for that purpose is settled by the authorities. *Russell* v. *Place*, 94 U. S. 606 ; *Campbell* v. *Rankin*, 99 U. S. 261 ; *Wilson's Executor* v. *Deen*, 121 U. S. 525. The statute required the opinion to be filed. 2 Howell's Annotated Stats. Mich. § 6426.

And it is beyond question, I submit, that such determination, and the order of said court as the result of such determination, constitute a judgment within the strict legal signification of that term.

I am not unaware of the fact that, in the opinion of Justice Miller, in the case of *Bucher* v. *Cheshire Railroad*, 125 U. S. 555, 578, there is a dictum which, at first blush, appears to be adverse to the position for which I am contending; but I think an examination of that case will show that what is there said has no application here. It will be found that the statement that there had been no judgment rendered in the state court is literally true. A verdict had been rendered in the case, but no judgment had been entered thereon. Upon the trial certain exceptions to rulings of the trial judge had been taken, and these were the subject of review by the same court sitting in banc, and, such exceptions being sustained, a new trial was ordered. The situation was exactly the same as it would have been had a motion for a new trial been made and heard before the trial judge upon allegations of error in his rulings, and he had granted a new trial.

II. Assuming that the order of the superior was as the plaintiff construes it, the case was this: The plaintiff was employed as a switchman. So far as the record shows — and unquestionably such was the fact — he was not employed for any specified time. He was at liberty to quit the employment whenever he chose, and the company was at liberty to discharge him at any time. Now, the order which he says he received was not to go outside of his employment for a particular occasion and to perform a single act, but it was an order in the nature of an enlargement of his duties, and when he assented to obey the order he assented that his duties should be so enlarged, and the work he afterwards did was within and not outside of the line of his duties.

*Leary* v. *Boston & Albany Railroad*, 139 Mass. 580, squarely sustains this proposition. The case was this: A person of full age and ordinary intelligence entered the employ of a railroad corporation as a freight truckman, loading and unloading cars in its yard and shifting freight in its freight

houses. After working in this capacity about three years, he was directed to perform, in addition to his regular duties, those of a fireman, from one to three hours a day, upon an engine which was used to shift freight cars in the yard, where there were many tracks, sidings, frogs, and switches, and to make up trains. He had acted as such fireman about twenty times, when, while standing on the foot-board of the engine, with his back towards the direction in which it was moving, and waiting for its speed to slacken so that he could get off, he was jolted off and injured. He had been brought up on a farm, and had ridden but six times in railroad cars. It was held that the injury was caused by one of the risks assumed by him in his employment, and that the action could not be maintained. The second paragraph of the *syllabus* reads as follows: "If a servant, of full age and ordinary intelligence, upon being required by his master to perform other duties more dangerous and complicated than those embraced in his original hiring, undertakes the same, knowing their dangerous character, although unwillingly and from fear of losing his employment, and is injured by reason of his ignorance and inexperience, he cannot maintain an action against the master for such injury."

Mr. Chief Justice Fuller, after stating the case, delivered the opinion of the court.

Counsel for plaintiff in error does not contend that the judgment of the Supreme Court of Michigan operated as a bar to this action, but he insists that that judgment precluded "the plaintiff from successfully maintaining a new action against the defendant, upon evidence tending to prove only the same state of facts which the evidence before the Supreme Court of the State tended to prove." This assumes a final adjudication on matter of law, binding between the parties, and, treating the judgment reversing and remanding the cause as final, applies it as an estoppel, notwithstanding the fact that a nonsuit was subsequently taken. We cannot concur in this view, and are of opinion that the Circuit Court was not obliged to give any such effect to the proceedings in the state court; nor

do we think that the Supreme Court of Michigan committed itself to the definite rulings supposed.

In *Manhattan Life Insurance Co.* v. *Broughton*, 109 U. S. 121, an action had been brought upon a life insurance policy in the state court and a nonsuit had been granted on the defendant's motion. A new action was subsequently instituted in the Circuit Court of the United States for the Southern District of New York, and upon the trial the court was requested to direct a verdict for the defendant, because the former judgment was a bar, and the defendant afterwards objected to the introduction, by the plaintiff, of certain evidence, because the question to which the evidence related had been tried and determined in the former action. The court denied the request and overruled the objection, and upon error to this court it was held that these rulings were correct; that a judgment of nonsuit did not determine the rights of the parties and was no bar to a new action; and, that "a trial upon which nothing was determined cannot support a plea of *res judicata*, or have any weight as evidence at another trial." *Homer* v. *Brown*, 16 How. 354, 366, was cited, in which it was held upon a writ of right for the recovery of certain property that "a judgment of *non pros.* given by a state court in a case between the same parties, for the same property, was not a sufficient plea in bar to prevent a recovery under a writ of right; nor was the agreement of the plaintiff to submit his case to that court upon a statement of facts, sufficient to prevent his recovery in the Circuit Court." Mr. Justice Wayne, delivering the opinion of the court, among other things, said: "The court was also asked to instruct the jury that the demandant was estopped from prosecuting this action by his agreement in his previous suit to submit it upon a statement of facts. In every view which can be taken of an estoppel, that agreement cannot be such here, because the demandant does not make in this case any denial of a fact admitted by him in that case. He rests his title here to the demanded premises upon the same proofs which were then agreed by him to be facts. This he has a right to do. His agreement only estopped him from denying that he had submitted him-

self to be nonsuited, or that he was not liable to its conse
quences."

In *Bucher* v. *Cheshire Railroad*, 125 U. S. 555, 578, the
plaintiff had sued in the state court and recovered judgment,
and the highest appellate court of the State, reviewing the
case, decided the points of law involved in it against the plain-
tiff, set aside the judgment, and sent the case back for a new
trial.   The plaintiff then became nonsuit, and brought suit in
the United States court on the same cause of action, and it
was held that he was not estopped.   The action was one for
damages -for personal injuries inflicted by reason of the de-
fendant's negligence, and one of the defences was that plain-
tiff was travelling on Sunday in violation of statute.   The
Circuit Court refused to submit to the jury the evidence upon
the question of whether or not his act of travelling on the
Lord's Day was a work of necessity or charity under the stat-
ute of Massachusetts in that behalf, and this court sustained
the ruling, for the reasons given by Mr. Justice Miller, who
said : " It is not a matter of estoppel which bound the parties
in the court below, because there was no judgment entered in
the case in which the ruling of the state court was made, and
we do not place the correctness of the determination of the
Circuit Court in refusing to permit this question to go to the
jury upon the ground that it was a point decided between
the parties, and, therefore, *res judicata* as between them in
the present action, but upon the ground that the Supreme
Court of the State in its decision, had given such a construc-
tion to the meaning of the words ' charity ' and ' necessity '
in the statute, as to clearly show that the evidence offered
upon that subject was not sufficient to prove that the plaintiff
was travelling for either of those purposes."   This court felt
itself constrained to follow the decision of the Supreme Judi-
cial Court of Massachusetts, in accordance with the rule that
the decisions of state courts relating to laws of a local charac-
ter, which may have become established by those courts, or
had always been a part of the law of the State, are usually
conclusive and always entitled to the highest respect of the
Federal courts.

But in the present case only the responsibility of a railroad company to its employés was involved, and it is settled that that question is matter of general law, and that, in the absence of statutory regulations by the State in which this cause of action arises, this court is not required to follow the decisions of the state courts. *Railroad Co.* v. *Lockwood,* 17 Wall. 357; *Hough* v. *Railway Co.*, 100 U. S. 213; *Myrick* v. *Michigan Central Railroad*, 107 U. S. 102; *Lake Shore &c. Railway* v. *Prentice*, 147 U. S. 101; *Baltimore & Ohio Railroad* v. *Baugh*, 149 U. S. 368.

Apart from this, while it is true that it was apparently ruled in the opinion of the Supreme Court of Michigan, not only that upon the record as it was before that court plaintiff was guilty of contributory negligence, but also that the defendant was free from negligence since that of which plaintiff complained was the negligence of a fellow-servant, yet an analysis of the language used satisfies us of the correctness of the statement in the principal opinion in *Van Dusen* y. *Letellier*, 78 Michigan, 492, 505, that the case was really decided "upon the ground that the plaintiff was injured in going into a place and at work in violation of orders not to do so," which might or might not appear to be so upon a retrial, and upon which the evidence in the Circuit Court was far from being undisputed. We, therefore, conclude that the opinion of the state Supreme Court should be given only such weight as its reasoning and the respectability of the source from whence it proceeds entitles it to receive.

And here reference may properly be made to the fact that considerable differences appear to exist between the evidence on the trial under review and that exhibited in the record before the state court, differences bearing chiefly upon the question of contributory negligence. But, assuming the evidence as to the other branch of the case to have been unchanged, we are not prepared to concede that the decision of the Supreme Court of Michigan proceeded upon the proposition that defendant must necessarily be absolved from negligence because all its employés, including plaintiff, were, as matter of law, fellow-servants with those who should have

kept the planking in good condition, as that proposition is untenable.

In *Hough* v. *Railway Company*, 100 U. S. 213, where the injury was the result of defective appliances, it was held that, to the general rule exempting the common master from liability to a servant for injuries caused by the negligence of fellow-servants, there are well-defined exceptions, one of which arises from the obligation of the master not to expose the servant when conducting his business to perils, from which they may be guarded by proper diligence on his part. While it is implied in the contract between the parties that the servant risks the dangers which ordinarily attend or are incident to the business in which he voluntarily engages for compensation, among which are the carelessness of his fellow-servants with whose habits, conduct, and capacity he has in the course of his duty an opportunity to become acquainted, and against whose neglect and incompetency he may himself take precautions, it is equally implied in the same contract that the master shall supply the physical means and agencies for the conduct of his business, and that he shall not be wanting in proper care in selecting such means. The master is not to be held as guaranteeing or warranting the absolute safety under all circumstances or the perfection of the machinery or apparatus which may be provided for the use of employés, but he is bound to exercise the care which the exigency reasonably demands in furnishing such as is adequate and suitable, and in keeping and maintaining them in such condition as to be reasonably safe for use.

These principles are reiterated in very many authorities, and among them in *Snow* v. *Housatonic Railroad*, 8 Allen, 441, referred to with approval by the Supreme Court of Michigan in this case, and much in point. It was there ruled that a railroad company may be held liable for an injury to one of its servants, which is caused by want of repair in the roadbed of the railroad, and that, if it is the duty of a servant to uncouple the cars of a train, and this cannot be easily done while the train is still, and he endeavors to uncouple them while the train is in motion, and steps between the cars and meets with

an injury which is caused by want of repair to the roadbed, the court cannot rule, as a matter of law, that he is careless, but should submit the case to the jury, although he continued in the employment of the company after he knew of the defect. The proximate cause of the injury was a hole in one of the planks laid down between the rails of the defendant's railroad where it crossed the highway, which had existed for more than two months, to the knowledge of the plaintiff, who had complained of it to the repairer of the tracks of the railroad. The Supreme Judicial Court of Massachusetts held that the defendant was not relieved of its liability to the plaintiff by reason of any relation which subsisted between him and it at the time of the accident arising out of the employment in which he was engaged, because, among other reasons, it did not appear that the defect in the road was the result of any such negligence in the servant as to excuse the defendant, but was caused by a want of repair in the superstructure between the tracks of the defendant's road, which defendant was bound to keep in a suitable and safe condition so that plaintiff could pass over it without incurring the risk of injury. The liability was rested on the implied obligation of the master, under his contract with those whom he employs, to use due care in supplying and maintaining suitable instrumentalities for the performance of the work or duty which he requires of them, and renders him liable for damages occasioned by a neglect or omission to fulfil this obligation, whether it arises from his own want of care or that of his agents to whom he entrusts the duty.

We regarded this doctrine as so well settled that in *Texas & Pacific Railway* v. *Cox*, 145 U. S. 593, 607, we contented ourselves, without discussion, with a reference to some of the cases in this court upon the subject. The decisions in the State of Michigan are to the same effect. *Van Dusen* v. *Letellier*, 78 Michigan, 492; *Sadowski* v. *Michigan Car Company*, 84 Michigan, 100; *Roux* v. *Blodgett & Davis Lumber Co.*, 85 Michigan, 519; *Ashman* v. *Flint & Père Marquette Railroad*, 90 Michigan, 567. Upon the whole, we see no ground for excepting this case from the rules governing other cases involving questions of fact.

The question of negligence is one of law for the court only where the facts are such that all reasonable men must draw the same conclusion from them, or, in other words, a case should not be withdrawn from the jury unless the conclusion follows as matter of law that no recovery can be had upon any view which can be properly taken of the facts the evidence tends to establish. *Railway Company* v. *Ives*, 144 U. S. 408, 417; *Railway Company* v. *Cox*, 145 U. S. 593, 606; *Railroad Company* v. *Miller*, 25 Michigan, 274; *Sadowski* v. *Car Company*, 84 Michigan, 100.

Tested by this rule we are of opinion that the case should have been left to the jury under proper instructions, inasmuch as an examination of the record discloses that there was evidence tending to show that the crossing was in an unsafe condition; that the injury happened in consequence; that the defect was occasioned under such circumstances, and was such in itself, that its existence must have been known to defendant; that sufficient time for repairs had elapsed; and that the plaintiff was acting in obedience to orders in uncoupling at the place and time, and as he was; was ignorant of the special peril; and was in the exercise of due care.

*The judgment is reversed, and the cause remanded with a direction to grant a new trial.*

Mr. JUSTICE FIELD did not hear the argument and took no part in the consideration or decision of this case.