# THE METROPOLITAN RAILROAD COMPANY

*v.*

# HAMMETT.

STREET RAILWAYS; CROSSINGS; CONTRIBUTORY NEGLIGENCE.

1. The highest degree of caution is required of those in charge of street railway cars at points where street railway lines intersect.

2. Where there is uncertainty as to the existence of either negligence or contributory negligence, the question is not one of law but of fact, to be settled by a jury; and this, whether the uncertainty arises from a conflict in the testimony, or because, the facts being undisputed, fair-minded men will honestly draw different conclusions from them.

3. An electric car has no exclusive or superior right of way over a horse car at a point where the two car lines intersect. It is the duty of the motorman or the driver of the car last arriving at the intersection to stop and let the other pass.

4. The driver of a horse car, under such circumstances, is justified in

supposing that an approaching electric car is moving within the maximum rate of speed prescribed by law and that its motorman will respect his rights as that of the first arrival at the crossing, if he be such, either by slackening its speed or by coming to a full stop.

No. 816.  Submitted October 21, 1898.  Decided November 1, 1898.

HEARING on an appeal by the defendant from a judgment on verdict in an action to recover damages for personal injuries.  *Affirmed.*

The COURT in its opinion stated the case as follows:

This is an appeal from a judgment rendered in the Supreme Court of the District of Columbia in favor of the appellee, Charles M. Hammett, in pursuance of a verdict of a jury for the sum of $1,500 against the appellant, the Metropolitan Railroad Company, in a suit instituted by the appellee to recover damages for personal injuries sustained by him through the alleged negligence of the agents and employees of the appellant.

On the evening of September 17, 1897, about 7 o'clock, one of the cars of the appellant, propelled by electricity, and with a trailer attached, going north on Ninth street west, in this city, struck, at the intersection of Ninth street west and P street north, a car of the Belt Line Railroad Company drawn by horses, which was going west on P street, and was in the charge of the appellee as driver.  The Metropolitan motor car struck the Belt Line car about its center with so much force as to push the latter northward along the Metropolitan track about seventy feet, and to break the running-board and one of the uprights at the sides of the car ; and several of the passengers on the Belt Line car were injured, some of them quite seriously.  Among those injured was the driver, the appellee, who was standing at his post on the front platform of his car when the collision occurred, and who was thrown into the street and thereby received the injuries of which he complained in this case.

In regard to the circumstances of the accident there seems

to have been at the trial no very material difference of statement. At all events, whatever difference there was is here of no consequence; since, for the purpose of the questions of law now raised, the account given by the appellee and his witnesses must be assumed to have been true. According to this statement, the appellee, who had previously been a driver for the Metropolitan Railroad Company, apparently before the change of motive power then recently made, and who had been in the service of the Belt Line Company only a few days, the day of the accident being the first on which he had full charge of a car as driver, and the trip being his third trip for that day, was driving his car westward on P street about dusk of the evening of the day mentioned, and had reached nearly to Ninth street. As he arrived about the building line of Ninth street he heard a bell on a car which he supposed to be at the intersection of O and Ninth streets, 300 feet to the south of him, between which point and the intersection of P and Ninth streets there is a perceptible downward grade. As he came out even with the sidewalk or curbstone on Ninth street he looked to the southward and saw the Metropolitan car about one-third of the way, that is, 100 feet, as he testifies, north of O street, which would make it about 200 feet south of where he was. He then looked to the north and saw no car within sight in that direction. What he did then he states as follows:

"There was no car in my way, so I continued right on. When I got up to the [Metropolitan] track, or when my horses' heads were to the track, I looked back and saw the car coming, and it seemed to me it was getting very close, coming at a great rate of speed, and of course I struck my horse one lick with the whip and started across—continued right on across. When I got across—that is, my car half way—this car struck me; this is the last I know."

This testimony was not greatly, if at all, modified upon cross-examination, and it was substantially corroborated by

the plaintiff's witnesses. On the other hand, the testimony given by the defendant's witnesses tended to show that the Metropolitan car was not running at an unusual rate of speed, and that the plaintiff had given some indication of an intention to stop his car, whereby the motorman of the Metropolitan car was induced to proceed on his way.

Certain measurements were also introduced in evidence, as that the distance on Ninth street between the building line of O street and the building line of P street is 300 feet; that the distance at Ninth street from the east building line of P street to the curbstone is 17.10 feet; that the distance from the building line just mentioned to the east rail of the Metropolitan track is 35.23 feet; that the distance from the curbstone to this east rail is 18.13 feet; that the distance from the building line to the west rail of the Metropolitan track is about forty feet; that the length of the Belt Line car was about eighteen feet; that the distance from the horses' heads to the dashboard was about nine or ten feet; and that therefore the whole distance from the horses' heads to the end of the car was about twenty-eight feet. These measurements were introduced for the purpose of showing that it was negligence on the part of the plaintiff, under the circumstances, to attempt to drive his horses and car across the Metropolitan track in front of defendant's electric car approaching on that track.

At the conclusion of the testimony instructions to the jury were requested by both parties; and to the rulings of the court thereon the defendant reserved exceptions, and these exceptions have been made the basis of assignments of error. But the only question raised before us in the brief and argument of counsel is as to the alleged contributory negligence of the plaintiff. The negligence of the defendant is practically conceded; but it is claimed that the plaintiff was guilty of contributory negligence, which caused or contributed to cause the accident, and that, therefore, he is not entitled to recover. And the contention further is, that his

conduct was negligence in law, for which the court should have peremptorily directed a verdict in favor of the defendant. The instruction requested by the defendant, which is the basis of the assignment of error now relied upon by it, is as follows:

"The jury are instructed that upon the whole evidence,. that offered on behalf of the plaintiff as well as that offered on behalf of the defendant, the plaintiff can not recover in this action, and their verdict must be for the defendant."

This instruction the court refused to give, and submitted to the jury upon the facts both the question of the negligence of the defendant and that of the alleged contributory negligence of the plaintiff, under instructions, of the substantial correctness of which no complaint is now made; and the jury returned a verdict for the plaintiff for the sum of $1,500, on which judgment was rendered in his favor. From this judgment the defendant has appealed.

*Mr. Nathaniel Wilson* for the appellant cited—

*Railroad Co.* v. *Grant*, 11 App. D. C. 107 ; *Adams* v. *Railroad Co.*, 9 App. D. C. 26; *Hurdle* v. *Railroad Co.*, 8 App. D. C. 120; *Railroad Co.* v. *Wright,* 7 App. D. C. 295 ; *Warner* v. *Railroad Co.*, 7 App. D. C. 85 ; *Elliott* v. *Railroad Co.*, 150 U. S. 245.

*Mr. Geo. E. Hamilton* and *Mr. M. J. Colbert* for the appellee cited—

*Watson* v. *Railway Co.*, 53 Minn. 551 ; *Key* v. *Railroad Co.*, 30 N. Y. Sup. 1070; *Cross* v. *Railroad Co.*, 102 Cal. 313 ; *Barrett* v. *Railroad Co.*, 45 N. Y. 634; Deering, Negligence, Sec. 22 ; *Stevenson* v. *Railroad Co.*, 18 F. R. 493; Beach, Contr. Neg., Pars. 40 and 189.

Mr. Justice MORRIS delivered the opinion of the Court:

We acquiesce unreservedly in the justice of the claim ad-

vanced with great earnestness by the counsel for the appellant in this case, that the very greatest care and caution should be required from the drivers or motormen of street cars at the intersection of the several lines of street railroads, especially since the introduction of the instrumentalities of rapid transit demanded by the feverish haste of modern progress. These men have not only their own lives and personal security at stake; but they have also the lives and personal security to guard of the crowds of passengers who commit themselves to their care and vigilance, and who are compelled for the time being to rely for their safety upon the prudent conduct of these agents of the railroad companies. It is not too much, therefore, to require of them the exercise of the highest degree of caution possible under the circumstances; and the rule is not improper which would hold them and their employers to a stricter accountability than might be demanded of other persons under the same or similar circumstances. But this requirement does not greatly help us to determine in the present instance whether the case is one for the court or for the jury; and this is the question which is presented for our consideration.

It must be a very plain case that would justify a court in withdrawing the question of contributory negligence from the consideration of a jury; and we certainly can not say that the present is such a case. In one of the latest utterances of the Supreme Court of the United States on the subject, that tribunal, by Mr. Chief Justice Fuller, said:

"The question of negligence is one of law for the court only where the facts are such that all reasonable men must draw the same conclusion from them; or, in other words, a case should not be withdrawn from the jury unless the conclusion follows, as matter of law, that no recovery can be had upon any view which can properly be taken of the facts which the evidence tends to establish. *Railway Co.* v. *Ives*, 144 U. S. 408, 417 ; *Railway Co.* v. *Cox*, 145 U. S. 593, 606; *Railroad Co.* v. *Miller*, 25 Michigan, 274; *Sadowski* v. *Car*

*Co.,* 84 Michigan, 100."   *Gardner* v. *Mich. Central R.R. Co.,* 150 U. S. 349.

And the same court, by Mr. Justice Brewer, in another case, said : " It is well settled that where there is uncertainty as to the existence of either negligence or contributory negligence, the question is not one of law, but of fact, and to be settled by a jury; and this, whether the uncertainty arises from a conflict in the testimony, or because the facts being undisputed, fair-minded men will honestly draw different conclusions from them."   *Richmond & Danville R.R. Co.* v. *Powers,* 149 U. S. 43.

These expositions of the law constitute the charts for our guidance in the present case.   Controlled by them, can we say that there is no uncertainty in regard to the facts which are supposed to constitute negligence on the part of the plaintiff, and no uncertainty in regard to the conclusions which fair minded men will honestly draw from the conceded facts ?   We do not think that we can.   The court below did not think so; and the jury, when the question was fully and fairly submitted to them, found that there was no contributory negligence on the part of the plaintiff.

It is conceded on the part of the defendant, as of course it must be, that in our present inquiry we must regard only the undisputed facts of the case.   For, if there is discrepancy between the testimony for the plaintiff and that for the defendant, in respect of the facts supposed to constitute the plaintiff's negligence, necessarily the determination of those facts is remitted to the jury.   And if there is no discrepancy, the testimony on behalf of the plaintiff may be assumed to be an accurate statement of the occurrence.   What, then, are the circumstances, according to the defendant's contention, wherein the plaintiff, according to his own testimony, was negligent?   There are six specifications of acts of omission and commission, which are these :

1. That he should have looked and listened for any approaching train on the Metropolitan tracks.

2. That he should have remained in a place of safety on the east side of the Metropolitan tracks after he saw the Metropolitan train approaching P street.

3. That he should have continued his observation and watchfulness of the Metropolitan train after he first saw it approaching him and not more than 200 feet distant, instead of looking in the other direction and up Ninth street, and keeping his eyes on his horses until they actually reached the east rail of the Metropolitan track, as he says he did.

4. That he should have refrained from whipping his horses and urging them into imminent and conspicuous danger, when, looking for the second time at the approaching train, he saw that train so near him.

5. That he should have stopped his horses and turned them aside when, looking the second time towards O street, he saw the Metropolitan car so near him as to make it impossible for him to get his car across the Metropolitan track in time to escape the approaching train.

6. That he should have refrained from the experiment of flight, for which there was no necessity, and which involved terrible dangers and risks to the lives of his passengers and to his own life.

The fourth, fifth and sixth specifications are inferences, not facts—inferences antagonistic to the whole tenor of the plaintiff's testimony, and not in accordance with it. For evidently the plaintiff did not suppose that he was going into imminent and conspicuous danger; nor did he suppose that it was impossible for him to get his car across the Metropolitan track in safety. It might have been an error of judgment on his part not to have turned his horses aside from the track, instead of urging them across, when he first realized his danger; but possibly most prudent men would have done as he did. Much might have depended on the closeness of his car to the Metropolitan track, or the closeness of the approaching electric car, and on the speed with

which the latter was moving. It might well be that to move rapidly forward under such circumstances would have been the wisest and most prudent course. We do not say that it was. But the uncertainty on this point alone properly required the submission of the case to the jury to determine what an ordinarily prudent man would have done under such circumstances.

The other specifications might be appropriate to the case of the intersection of a country road with the tracks of a steam railroad; but we fail to see that they are applicable to the intersections of street railroads in a city. It was not the duty of the plaintiff, as claimed, to remain in a place of safety on the east side of the Metropolitan track. He had the same precise duty which the defendant had, to transport the passengers in his car to their several places of destination in safety, not to impound them on the east side of the Metropolitan track until all the cars that should come in sight on that track should pass. This might have detained him all night. The Metropolitan cars had no exclusive or superior right of way at the intersection. It was their duty to stop and let him pass if he arrived first at the intersection; and they were under as much obligation to respect his rights as he was to respect theirs. Neither one of the parties, of course, was at liberty to risk the lives and limbs of his passengers; but the rights of the passengers are not here at issue.

It is very evident that the Metropolitan car was moving at a very high, and probably unlawful rate of speed, and that this was the principal cause of the accident. This is evidenced conclusively by the very great distance to which it propelled the Belt Line car after striking it. If the plaintiff had appreciated the fact that the Metropolitan car was moving thus rapidly, a corresponding degree of caution would have been imposed upon him to avoid impending danger. There was nothing to advise him of such rapid motion. He was justified in supposing that the car was

moving within the maximum rate of speed prescribed by law, and that it would respect his rights as that of the first arrival at the crossing, either by slackening its speed or by coming to a full stop at P street.

So far, therefore, from there being a clear case of negligence on the part of the driver of the Belt Line car, the plaintiff in this case, a fair minded and reasonable man might well acquit him of all blame in the matter. The case was eminently one for the jury; and it would have been error to take it away from them. We do not see that the court would have been justified in so doing by anything that was said by this court in any of the decisions cited in this connection by the appellant. In suits of this character, perhaps, more than in any others, each case must be determined by its own circumstances.

It is our conclusion that the judgment appealed from must be *affirmed, with costs. And it is so ordered.*