### MILLER v. MISSOURI, K. & T. RY. CO.

(Circuit Court of Appeals, Eighth Circuit.   April 3, 1909.)

No. 2,900.

1. MASTER AND SERVANT (§ 101*)—INJURIES TO SERVANT—DEFECTIVE APPLIANCES.

It is the duty of the master to furnish appliances free from defects discoverable by the exercise of ordinary care.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 171–184; Dec. Dig. § 101.*

Duty of railroad companies to furnish safe appliances, see note to Felton v. Bullard, 37 C. C. A. 8.]

2. MASTER AND SERVANT (§ 285*)—INJURIES TO SERVANT—RAILROADS—DEFECTIVE FREIGHT CARS—NEGLIGENCE—QUESTION FOR JURY.

In an action for injuries to a railroad brakeman by a defective handhold on the corner of a freight car, whether the end of the handhold which came loose was fastened with a lag screw, or whether the wood comprising the roof of the car to which it was fastened had been permitted to become decayed so that it was insufficient to hold the screw, and, if so, whether such condition could have been discovered by reasonable and ordinary inspection, or whether the handhold had been fastened by bolts which had broken off by reason of some latent defect which could not have been so discovered, *held* for the jury.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 285.*]

3. MASTER AND SERVANT (§ 208*)—INJURIES TO SERVANT—ASSUMED RISK.

While an employé assumes all the ordinary risks incident to the service or business in which he is engaged, he does not assume the risk arising from the neglect of the employer to perform a positive duty as to furnishing proper appliances, except where the employé receives or uses a defective appliance, and, with knowledge of the defect, continues to use it without notice to the employer.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 551–558; Dec. Dig. § 208.*

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

4. NEGLIGENCE (§ 136*)—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

Where there is uncertainty as to the existence of either negligence or contributory negligence, the question is one of fact for the jury; and this whether the uncertainty arises from a conflict of the testimony, or be-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

cause, the facts being undisputed, fair-minded men may honestly draw different conclusions therefrom.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 277–353; Dec. Dig. § 136.*]

In Error to the Circuit Court of the United States for the Western District of Missouri.

C. C. Lawson and Silver & Brown, for plaintiff in error.

George P. B. Jackson, for defendant in error.

Before HOOK, Circuit Judge, and RINER and AMIDON, District Judges.

RINER, District Judge. This action, commenced in the state court, was removed to the Circuit Court of the United States for the Western District of Missouri by the defendant, on the ground that the controversy was one wholly between citizens of different states; the defendant being a citizen of the state of Kansas and the plaintiff a citizen of the state of Missouri. The parties are here arranged as they were in the court below, the plaintiff in error being the plaintiff and the defendant in error being the defendant; and for convenience they will be hereafter referred to as plaintiff and defendant, respectively. The object of the action is to recover for personal injuries suffered by the plaintiff while engaged as a brakeman in the employ of the defendant. At the conclusion of the testimony, the court instructed the jury to return a verdict in favor of the defendant. A judgment was entered in favor of the defendant upon the verdict, and this writ of error is sued out to reverse that judgment.

The record discloses the following state of facts: That the defendant was a railroad corporation created and organized under the laws of Kansas and operating a line of railroad from St. Louis, Mo., to Harrisonville, Mo., and in other states; that a part of its lines of railroad extended from Sedalia, Mo., to Paola, Kan.; that the plaintiff on September 29, 1905, was a brakeman on one of its freight trains being operated between Sedalia and Paola; that the train on which he was employed arrived at East Lynn, a station in Cass county, Mo., about 4:30 o'clock in the morning; that at the time the train arrived it was still dark; that there was no light in the station, and that he had no light other than that furnished by a lantern carried by him; that, upon the arrival of the train at East Lynn, the conductor directed the plaintiff to uncouple the engine and get a car that was then standing on the side track near the station; that between this car and the switch-head on the side track there was a string of cars which it was necessary to couple onto and push back east, the train being headed west, to a connection with the car they desired to take out so that it might be coupled on for the purpose of placing it in the train; that there was a road crossing near the station and this car was separated from the other cars at the crossing, the car desired being on the east side of the crossing, and the other cars in the string on the west side; that, after coupling the engine to the string of cars, the plaintiff ascended to the top of the first car to release the brakes upon this

string of cars so that they could be moved; that he passed from car to car, releasing the brakes upon each until he came to the last car but one, and, after releasing the brake, he proceeded to the ladder on the southeast corner of the car, as it then stood, for the purpose of descending in order to make the coupling with the car which they desired to put into the train; that in doing so he placed his feet upon one of the iron bars bolted to the car to be used as a step for the ladder, and got hold of what is designated in the testimony as the grab iron or bar which is bolted onto the roof of the car, and is used in conjunction with the bars on the side as a ladder; that as he was in the act of doing this the grab iron pulled loose at one end, causing the plaintiff to fall backward and to the ground, a distance of about 14 feet, striking on his hip and back, thereby receiving the injuries here complained of.

The testimony tends to show that this car from which the plaintiff fell was known as a "bad order" car, although there is nothing in the record disclosing that it was so marked or in what respect it was damaged. The evidence does show, however, that whatever the damage to the car was it did not affect the appearance of the car on top. The plaintiff testified that he did not know it was a bad order car, that at the time he attempted to descend he noticed the handhold by the light of his lantern, and that it was apparently all right. The testimony shows that the plaintiff was a brakeman on a through freight, and had been in the service of the company but a short time. He testified that, while he had heard some of the trainmen say there were some bad order cars scattered along at the different sidings, he did not know there were any cars of that character in the string he was then handling, and could not know from his position on top of the car. The record shows that the track upon which this car was standing was not a track set apart for "bad order" cars, but was a side track at a small station for general use; the shops being at Sedalia where "bad order" cars were usually stored for the purpose of being repaired.

John Beems, a car repairer in the shops at Sedalia, was sent out by the foreman of the shops the day following the plaintiff's injury to examine the car from which the plaintiff fell. He testified that one end of the handhold had been fastened to the top of the car with a lag screw, that the lag screw had pulled out, and that the timber on top of the car at the place where the lag screw had been fastened was decayed and rotten. He testified on cross-examination that he knew it had been fastened with a lag screw, because the screw, which was about four inches in length, was still in the handhold. He further testified that the corner of the car was not broken down or otherwise damaged, but that this screw had given way simply because of the rotten condition of the wood; that, if the car was damaged otherwise, it was not discernible from the top.

J. C. Ragsdale, a witness for the defendant, testified that he was a freight brakeman on the opposite crew to the plaintiff; that a few nights after the accident to the plaintiff his train stopped at East Lynn; that while doing some work there the other brakeman of his crew called his attention to the fact that this handhold was loose at one end; that he was at that time on the top of the car, and testified

that the car was not "cornered" at the time, meaning thereby, as the testimony shows, that it was not broken down.

Thickitt, a witness for the defendant, testified that he was one of its claim agents; that he saw the car from which the plaintiff fell in the yards at Sedalia on the 17th of November, 1906, a year and three months after the accident; that he identified it by its number; that the car at the time he saw it showed that it had been wrecked, knocked off its trucks, and the truss rods knocked out of place; that it had been "cornered" and the timber shattered. He further testified that the damage to the car was old; that the handhold at the top had been fastened at one end with an angle bolt, and at the other by a button-headed carriage bolt; that neither end had ever been fastened with a lag screw. He further testified that the car was chalk-marked "B. O." meaning bad order. An effort was also made to show that it was a custom of the defendant to put bad order cars upon side tracks at different stations.

It will thus be seen that the testimony was squarely in conflict upon the vital issue in the case. The rule is elementary that it is the duty of the employer to furnish appliances free from defects discoverable by the exercise of ordinary care, and that the employé has a right to rely upon this duty being performed; hence it was all important in this case to determine whether or not the end of this handhold which came loose was fastened with a lag screw, and whether the wood comprising the roof of this car to which it had been fastened was allowed to become rotten and decayed, so that it was insufficient to hold the screw, and, if so, whether that condition could have been discovered by the exercise of ordinary care—that is, reasonable and ordinary inspection—or whether the handhold had been fastened to the top of the car by bolts, and that these bolts had broken off by reason of some latent defect which could not be discovered by the exercise of ordinary care. In the one case, if by the exercise of ordinary care the defect could have been discovered, there would be liability in the other, if the exercise of ordinary care would not have disclosed the defect, there would be no liability; and this, we think, was a question for the jury to determine.

It is undoubtedly the settled rule that an employé entering the service of another assumes all of the ordinary risks incident to that service or business. He does not, however, assume the risk arising from the neglect of the employer to perform a positive duty owing to the employé with respect to appliances. The exception to this rule, which is abundantly established by judicial decisions, is that, where the employé receives for use a defective appliance and with knowledge of the defect continues to use it without notice to the employer, he cannot recover for an injury resulting from the defective appliance thus voluntarily used by him. But, as stated by the Supreme Court in the case of Texas & Pacific Railway Company v. Archibald, 170 U. S. 665, 18 Sup. Ct. 777, 42 L. Ed. 1188:

"No reason can be found for and no authority exists supporting the contention that an employé, either from his knowledge of the employer's methods of business or from a failure to use ordinary care to ascertain such methods, subjects himself to the risks of appliances being furnished, which contain de-

fects that might have been discovered by reasonable inspection. The employer on the one hand may rely on the fact that his employé assumes the risks usually incident to the employment. The employé on the other has the right to rest on the assumption that appliances furnished are free from defects discoverable by proper inspection, and is not submitted to the danger of using appliances containing such defects because of his knowledge of the general methods adopted by the employer in carrying on his business, or because by ordinary care he might have known of the methods, and inferred therefrom that danger of unsafe appliances might arise."

This rule does not relieve the employé from observing patent defects in the appliances, for in entering an employment which is hazardous he assumes the usual risks of that service, including those which are apparent to ordinary observation. The risks which are not obvious that the employé assumes are such perils only as exist after the master has used due care to guard the former against the danger. Gibson v. Erie Railway Co., 63 N. Y. 449, 20 Am. Rep. 552; De Forest v. Jewett, 88 N. Y. 264; Williams v. Delaware, Lackawanna, etc., Railroad, 116 N. Y. 628, 22 N. E. 1117; Hough v. Railway Company, 100 U. S. 214, 25 L. Ed. 612, and cases there cited; Choctaw, etc., Railway v. McDade, 191 U. S. 64, 24 Sup. Ct. 24, 48 L. Ed. 96; U. P. Railway Co. v. Snyder, 152 U. S. 684, 14 Sup. Ct. 756, 38 L. Ed. 597. The rule in cases where there is a substantial conflict of evidence upon a vital issue in the case, or where from the evidence fair-minded men might honestly draw different conclusions, is clearly stated by Mr. Justice Brewer in the case of Richmond & Danville Railroad Company v. Powers, 149 U. S. 43, 13 Sup. Ct. 748, 37 L. Ed. 642, as follows:

"It is well settled that, where there is uncertainty as to the existence of either negligence or contributory negligence, the question is not one of law, but of fact, and to be settled by a jury; and this whether the uncertainty arises from a conflict in the testimony, or because, the facts being undisputed, fair-minded men will honestly draw different conclusions from them"—citing in support of the rule Railway Co. v. Stout, 17 Wall. 657, 21 L. Ed. 745; Washington & Georgetown Railroad v. McDade, 135 U. S. 554, 10 Sup. Ct. 1044, 34 L. Ed. 235; Delaware, Lackawanna, etc., Railroad v. Converse, 139 U. S. 469, 11 Sup. Ct. 569, 35 L. Ed. 213; Gardner v. Railway Co., 150 U. S. 349, 14 Sup. Ct. 140, 37 L. Ed. 1107; Felton v. Bullard, 94 Fed. 781, 37 C. C. A. 1.

In the case of Gardner v. Railway Co., supra, the Supreme Court speaking by Chief Justice Fuller, said:

"The question of negligence is one of law for the court only where the facts are such that all reasonable men must draw the same conclusion from them, or, in other words, a case should not be withdrawn from the jury unless the conclusion follows as a matter of law that no recovery can be had upon any view which can be properly taken of the facts the evidence tends to establish."

The defendant in error cites and relies upon two cases only. Chesapeake & O. R. Co. v. Hennessey, 96 Fed. 713, 38 C. C. A. 307, and Florence & C. C. R. R. Co. v. Whipps, 138 Fed. 13, 70 C. C. A. 443. We do not think either of these cases are decisive of this case. In the case of Railroad Company v. Hennessey, in which it was held that a recovery could not be had, the record disclosed that Hennessey was a switchman in the yards of the company at Russell where some of the company's repair shops were located; that it was his business to handle damaged cars and to put them on certain tracks set aside especially

for the purpose of handling such cars, and cars that had been repaired and these tracks were known as "repair tracks"; that the accident happened about 4 o'clock in the afternoon; that the damaged condition of the car was plainly observable, and therefore he must be held to have assumed the risk of handling it. The case of Florence & C. C. R. R. Co. v. Whipps was a case where a rock slide had occurred in a cañon in the mountains through which the railroad was operated, and that Whipps, together with some sectionmen and bridge hands, was sent to the point where the slide occurred to clear the track, and while engaged in that work a large rock fell from the mountain side, striking Whipps and producing injuries which resulted in his death. The work was being conducted at night; the slide occurring in the afternoon. A recovery was sought upon the ground that one of the sectionmen in reply to a question said that he had examined the slide before dark and that he considered the place safe, and, therefore, the rule that the railroad company was bound to furnish a safe working place for Whipps was invoked. The court held that "the doctrine of a safe place had no application." In disposing of the case the court said:

"The place was not in a condition made or chosen by the defendant, but in such condition as the disaster had left it. It was the plain duty of the servants in such an exigency, without awaiting orders, to engage in and hurry the work of clearing the obstruction from the track, and incidently to look after and guard their own safety while so engaged."

After a careful examination of the record, in view of the conflicting character of the evidence, we are of opinion that the case should have been left to the determination of the jury under proper instructions.

The judgment must be reversed and the case remanded, with directions to grant a new trial.