# CASES

## ARGUED AND DETERMINED

### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS.

---

### SNIPES v. SOUTHERN RY. CO.

#### (Circuit Court of Appeals, Fourth Circuit. November 5, 1908.)

#### No. 817.

1. MASTER AND SERVANT (§ 289*)—INJURIES TO SERVANT—QUESTION FOR JURY.

In an action for injuries to an engineer, whether plaintiff was informed by his conductor and believed that the train with which he collided was out of the way, and whether he was negligent in so believing, *held* for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1093; Dec. Dig. § 289.*]

2. NEGLIGENCE (§ 136*)—QUESTION OF LAW OR FACT.

Where there is uncertainty as to the existence of negligence or contributory negligence, the question is one of fact and not of law, whether the uncertainty arises from a conflict in the testimony or because fairminded men might honestly draw different conclusions from the undisputed facts.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 277–353; Dec. Dig. § 136.*]

3. COURTS (§ 372*)—FEDERAL COURTS—STATE LAWS AS RULES OF DECISION—GENERAL LAW.

Whether a railroad engineer and his conductor are fellow servants will be determined in the federal courts as a question of general law only in the absence of statutory regulations of the state in which the action arises.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 977–979; Dec. Dig. § 372.*

State laws as rules of decision in federal courts, see notes to Wilson v Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

4. MASTER AND SERVANT (§ 182*)—FELLOW SERVANTS—ENGINEER AND CONDUCTOR—CONSTITUTIONAL PROVISION.

Const. S. C. art. 9, § 15, provides that every railroad employé shall have the same rights and remedies for any injury suffered by him from the acts or omissions of the corporation or its employés as are allowed by law to other persons not employés, when the injury results from the negligence of a superior agent or officer or of a person having the right to control or direct the services of the party injured. *Held*, that

---

'For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

166 F.—1

an engineer and conductor of a railroad train under such provisions are not fellow servants.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 371, 372; Dec. Dig. § 182.*

Who are fellow servants, see notes to Northern Pac. R. Co. v. Smith, 8 C. C. A. 668; Flippin v. Kimball, 31 C. C. A. 286.]

5. MASTER AND SERVANT (§ 245*) — INJURIES TO SERVANT—OPERATION OF RAILROAD—RULES.

A railroad rule provided that a train should not leave its initial station on any division until it had ascertained whether all trains due of a superior or the same class had arrived or left. Other rules regulating conductors made them responsible for the safe management of their trains and for the performance of duty by train employés, with authority to suspend an employé for gross misconduct. They also required conductors to obey orders of station agents, to report to the train dispatcher for orders before leaving the initial station, to examine special order books for special orders, and to obey the same, etc. Other rules required engineers to obey orders of the conductors with respect to the general management of their trains, to start on proper signal, to comply with the rule prohibiting departure before knowing that other trains due had arrived or left, and to be responsible with the conductor for the safety of trains. *Held*, that under such rules an engineer and his conductor were not equally negligent in leaving a station prior to the arrival of a conflicting train of which they were notified by a train order, the conductor having ordered the engineer to proceed and informed him that the conflicting train was in.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 245.*]

6. MASTER AND SERVANT (§ 100*)—INJURIES TO SERVANT—NEGLIGENCE—CONTRACT.

A railroad company may not contract with its employés to exempt itself from liability for negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 166; Dec. Dig. § 100.*]

7. MASTER AND SERVANT (§ 180*)—INJURIES TO SERVANT—CONSTITUTIONAL PROVISIONS—RULE.

A railroad company cannot avoid Const. S. C. art. 9, § 15, providing that every railroad employé shall have the same rights and remedies for an injury suffered by him from the acts or omissions of the corporation or its employés as are allowed by law to other persons not employés, when the injury results from the negligence of a superior agent or officer or of a person having the right to control or direct, etc., by the adoption or promulgation of rules on such subject.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 180.*]

Boyd, J., dissenting.

In Error to the Circuit Court of the United States for the District of South Carolina, at Columbia.

E. J. Best and W. Boyd Evans (Geo. R. Rembert and Lawson D. Melton, on the brief), for plaintiff in error.

B. L. Abney (Abney & Muller, on the brief), for defendant in error.

Before PRITCHARD, Circuit Judge, and WADDILL and BOYD, District Judges.

WADDILL, District Judge. This is an action at law instituted by plaintiff in error, an engineer in the service of the defendant company, to recover damages for personal injuries received by him on the 16th

day of November, 1906, in the state of South Carolina, while in the discharge of his duty as such engineer. The defendant answered, denying negligence on its part, and insisted that the accident was caused by the contributory negligence of the plaintiff (which it alleges was the proximate cause of the accident) and that of the negligence of the conductor of the train, causing the accident; that said conductor and engineer were fellow servants, and the company therefore not liable to the latter.

The facts in the case are, briefly, that, on the morning of the day named, the engine of a certain work train known as "Extra No. 476," of which plaintiff was engineer, while going north, and when a few miles of Columbia, S. C., collided in a head-on collision with the engine of extra freight train No. 828, coming south, as the former was rounding a sharp curve, and the plaintiff received the injury sued for. The testimony relates almost entirely to the circumstances under which train No. 476 left Columbia, and whether or not the plaintiff was guilty of such negligence in taking his train from Columbia as to disentitle him to recover. Witnesses were examined in behalf of the plaintiff and defendant, including the plaintiff, and the conductor of the train, the train dispatcher, and the division superintendent of the company; at the conclusion of which a motion was made by the defendant to take the case from the jury, and instruct a verdict for the defendant, which motion the court sustained, and directed a verdict for the defendant, which was rendered, and judgment entered thereon, to which action the plaintiff excepted, and sued out this writ of error.

The trial court in directing the verdict considered the relation ordinarily existing between a conductor and an engineer, and commented upon the fact that this was an extra train, operated under special orders, as distinguished from general rules, which in its judgment imposed a joint responsibility upon the conductor and engineer, and after referring to the engineer's conduct at the time of and before leaving Columbia, and the fact of his obeying the orders of the conductor so to do, said:

"If that was the sole question in the case, I would still be inclined to leave it to the jury, although my opinion is that he did not take the precautions that a prudent man, and a reasonable man, ought to have taken; and that would be my opinion. But my opinion on the question of fact is not controlling, and I would prefer to have had the jury pass upon that. But another ground is presented, and that is that assuming that the conductor told him that No. 828 was in—although the conductor now denies it—but assume that is the fact, for I think the preponderance of the evidence establishes it, that he was so informed, all the circumstances tend to satisfy me that he believed No. 828 was out of the way, it was careless in him to think so, and to be governed by that thought; but now the case rests entirely upon as to whether or not the conductor was so far the representative of the master that independent of any investigation by him, or of any knowledge by him as to whether No. 828 was in, he was bound to obey the order of the conductor, the conductor so far representing the master that he was not a fellow servant of the engineer, and a great discussion has turned upon that question."

The court thereupon held that, as to this train, the conductor and engineer were fellow servants, charged with like duties; that they stood upon the same footing, and that one could not devolve his duty upon the other.

It is as to the correctness of these rulings that we are to pass, and, although there are quite a number of assignments of error, they involve but three questions, as follows: (1) Did the court err in passing upon the conflict in the testimony between the plaintiff and the defendant as to what occurred respecting the departure of the train from Columbia which caused the accident; (2) in holding that, accepting the plaintiff's statements as to the occurrences, it was negligence for him to have so believed and acted, instead of submitting the two matters to the jury; and (3) in holding that the conductor and engineer on this occasion were fellow servants?

The rules and orders of the company specially bearing upon and applicable to this case, are as follows:

Rule 83. "A train must not leave its initial station on any division, or a junction, or pass from double to single track, until it is ascertained whether all trains due, which are superior, or of the same class, have arrived or left."

Rule 85. "A train must not start until the proper signal is given."

Rule 366. "Conductors. Conductors will report to, and receive instructions from the superintendent and train master. They also obey the orders of station agents, station masters and yard masters at stations and in yards."

Rule 367. "Conductors. They will have charge of the trains to which they are assigned and of all persons employed thereon.

"They are responsible for the safe and proper management of such trains, for the protection and care of passengers, baggage and freight, for a thorough performance of duty by the train employés, and for the observance and enforcement of all rules and orders relative thereto. They will report all violations of rules and neglect of duty by the train employés to the superintendent or train master, and in cases of gross misconduct may, if necessary, suspend any such employé for the rest of the trip, reporting such action by wire, and holding the train should safety require it."

Rule 375. "Conductors. Before leaving the initial station on any division, they must report to the train dispatcher for orders, giving the number of the engine, name of the engineman, and number of cars in the train, and if there are no orders for them they must receive a clearance card, Form 802, properly dated, addressed and signed, and must see that the engineman receives one also."

Rule 376. "Conductors. They must examine the special order books and bulletin boards at such stations and at all points on the road where it is practicable to do so, and will be held responsible for the observance of all special orders and bulletins after they have had an opportunity to read them."

Rule 465. "Conductors. When their trains are in motion, unless their presence is required elsewhere, their proper place is in the caboose, and they must there maintain such position as will give them a full view of their trains and enable them to see whether they are all right and the men are in proper position and are performing their duties."

Rule 500. "Enginemen. They must obey the orders of the train master and the road foreman of engines. Within station and yard limits they must obey the orders of the station masters, station agents, and yard masters respectively. Within shop and engine house limits, they must obey the orders of the foreman. They must obey the orders of their conductors with respect to the general management of their trains and to the station, yard or construction work in which they are engaged."

Rule 515. "Enginemen. As soon as the proper signal is given they must start their trains carefully and see that they have the whole train before passing the station or yard limits."

Rule 508. "Enginemen. They must personally comply with rule 83 in all cases."

Rule 105. "Both conductors and enginemen are responsible for the safety of their trains and, under conditions not provided for by the rules, must take every precaution for their protection."

Order is as follows:

**"No. 23.**

"Southern Railway Co., Train Order No. 23. Dated Columbia, S. C., Nov. 16, 1906. To 2nd and 3rd class and Extra Work Eng. 476. At Columbia, S. C. Work Extra 476 will work five 5 A. M. until eight 8 P. M. between Columbia and Winnsboro protecting against Extra 828 South and second and third class trains. W. L. W., Superintendent."

The action of the court in taking the case from the jury (1 and 2 above) will be first considered.

We are unable to concur with the court in its action in this respect. The real issue was, whose negligence caused this accident? Plaintiff said it was that of the defendant, because the defendant's representative, under whom he acted, directed him to do what he did, which the representative denies. This involved a question of fact which the jury should have passed on, and not the court; as should also the jury have determined whether under all the facts and circumstances of the case, assuming the plaintiff's version to be true as to what occurred, he was warranted in acting as he did in the situation in which he was placed. Either or both of these questions the jury might have decided in favor of the defendant or of the plaintiff. The lower court undertook to pass upon them, instead of submitting them to the jury, and held the plaintiff's version of what occurred between himself and the conductor to be true, but that the plaintiff was not warranted, under the circumstances, in obeying the orders of the conductor. This was interfering with the province of the jury, who might have taken an entirely different view of the same from what the judge did; and it will neither do to say that the court determined the main facts in favor of the plaintiff, or that the case was taken from the jury at the instance of the defendant. So far as the defendant was concerned, it, perchance, was not hurt, since the finding of the second proposition by the court was in its favor, and plaintiff could not have recovered in any event; whereas, so far as the plaintiff was concerned, it was necessary for the court to have found both questions in his favor. We think the plaintiff was clearly entitled to have the jury pass upon each one, and the action of the court was erroneous. The law applicable to these questions is so well settled as to require but little citation of authority.

In the case of Richmond & Danville R. R. Co. v. Powers, 149 U. S. 43, 13 Sup. Ct. 748, 37 L. Ed. 642, it is said:

"It is well settled that, where there is uncertainty as to the existence of either negligence or contributory negligence, the question is not one of law, but of fact, and to be settled by a jury; and this, whether the uncertainty arises from a conflict in the testimony, or because, the facts being undisputed, fair-minded men will honestly draw different conclusions from them."

In the case of McDermott v. Severe, 202 U. S. 600, 604, 26 Sup. Ct. 709, 710, 50 L. Ed. 1162, it is said:

"Negligence only becomes a question of law to be taken from the jury when the facts are such that fair-minded men can only draw from them the inference that there was no negligence. If fair-minded men from the facts admitted, or conflicting testimony, may honestly draw different conclusions as to the negligence charged, the question is not one of law, but of fact, and to be settled by the jury under proper instructions."

This brings us to the consideration of the third and last objection, namely, the ruling of the lower court holding that the plaintiff was a fellow servant with the conductor of this train under the rules of the company respecting the operation of the particular train, and hence that the defendant was not liable. We have carefully considered and given much thought to this question, as evidently the judge of the lower court did, and our mature judgment is that the court erred in its ruling thereon. That a conductor and engineer do not occupy the relation of fellow servants one to the other, has long been the settled doctrine of the Supreme Court of South Carolina (Boatwright v. Railroad Co., 25 S. C. 133, and cases cited); and they no longer occupy such relation, certainly as to trains ordinarily of the defendant now, under the organic law of the state of South Carolina. Article 9, § 15, of the Constitution of South Carolina, is as follows:

"Every employé of any railroad corporation shall have the same rights and remedies for any injury suffered by him from the acts or omissions of said corporation or its employés as are allowed by law to other persons not employés, when the injury results from the negligence of a superior agent or officer, or of a person having a right to control or direct the services of the party injured," etc.

This provision of the Constitution has several times been under review by the Supreme Court of South Carolina, and that court has sustained and given to the provision full force and effect. Hicks v. Railroad, 63 S. C. 559, 41 S. E. 753; Rhodes v. Railroad, 68 S. C. 494, 47 S. E. 689; Reed v. Railroad, 75 S. C. 162, 171, 55 S. E. 218, and cases cited.

Counsel for the defendant insist that the engineer and conductor are fellow servants, citing, in support of their position, New England Railroad v. Conroy, 175 U. S. 323, 20 Sup. Ct. 85, 44 L. Ed. 181, which modified the former decision of that court, as it is claimed, of Chicago, etc., Railroad v. Ross, 112 U. S. 377, 5 Sup. Ct. 184, 28 L. Ed. 787, on this subject; and also cite B. & O. R. R. v. Baugh, 149 U. S. 369, 13 Sup. Ct. 914, 37 L. Ed. 772, and contend that it is the general, and not the local law, which controls in the determination of the question of who are fellow servants. These cases have no special bearing here, assuming they support the contention made, since they have reference to what may be the true rule in the absence of statutory regulation of the state on the subject. The Supreme Court of the United States has not undertaken to declare that the general doctrine, when at variance with the local Constitution and laws of a state, should override the latter. In Gardner v. Michigan Central R. R., 150 U. S. 349, 14 Sup. Ct. 140, 37 L. Ed. 1107, the same subject was under consideration, and the court said:

"But in the present case only the responsibility of the railroad company to its employés was involved; and it is settled that the question is a matter of general law, and that, in the absence of statutory regulation of the state in which causes of action arise, this court is not required to follow decisions of the state courts."

See, also, Northern Pacific R. R. v. Mase, 63 Fed. 115, 11 C. C. A. 63. Here we have the provision of the organic law of South Carolina, determining who are, and who are not, fellow servants; and

it is by that Constitution, as interpreted by the highest court of that state, we should be governed.

Appellees insist that, under rules 105 and 502, the conductor and engineer were jointly and severally responsible for the safety of their train, and for the movement and protection of the same; and that under order No. 23, above referred to, extra freight train 828 had the right of way over their train, work extra 476; and that said conductor and engineer were each jointly negligent in leaving Columbia without ascertaining that No. 828 was in, and likewise for their failure to send either a flagman, brakeman, or fireman, with danger signals, ahead.

In considering these questions, the learned judge of the lower court, while apparently conceding that ordinarily, under the rules of the company, the engineer would have to obey the conductor's orders, and hence would not be a fellow servant with the conductor, held that, as to this class of trains being operated under special orders, as distinguished from general rules, a different rule should prevail, and they would be fellow servants. We cannot see our way to concur in this view. Indeed, there is a greater necessity for the company's having some one person in the control and operation of its trains under orders than under rules, and, so far as the engineman is concerned, there is much less force and reason from the standpoint of justice and fairness for holding him responsible for the failure to understand and carry out the rules concerning the movement of his train, than orders. One he would have time to consider fully, and the other to act upon in a moment. To know the effect and meaning of five different orders, all issued and suddenly handed to him, each separate one quite as lengthy and complicated as No. 23 copied above, calls for a degree of intelligence, quick perception, and great presence of mind that but few men are blessed with. For an engineer and conductor not to misunderstand and dispute over such orders, and their meaning, if the idea sought to be maintained should prevail, would be more than human, and the confusion necessarily arising therefrom would quickly result in the suspension of railroad operation. The rules of the company are reasonably clear, especially considering their great number, and we think under them trains can easily be operated without bringing about the chaotic condition that would result in the effort to, in effect, place conductors and engineers on the same footing, so far as the trains' movements are concerned. Of course, they are jointly responsible in a certain sense, and indeed in many respects; but this does not mean that in a case like the one under consideration, or as to matters pertaining to the ordinary duties of the engineer, and the interpretation of rules and orders, the engineer should attempt to set himself up in opposition to the conductor. If it should be said that the rules are broad enough to authorize this interpretation, the answer is that they do not mean that, and it is not their fair interpretation; and the engineer attempting to act upon the view of the rules contended for, as to his authority, would quickly find himself suspended by his conductor, and discharged, as he should be, by the company. Rules 367 and 502 are of easy interpretation, and in a manner that we undertake to say is in accordance with their

usual construction; and rule 105 is likewise readily understood. Rule 367 is clear and explicit as to the power and authority of the conductor. He is placed in charge of trains, and of all persons employed thereon, and made responsible for their safe and proper management, and the safety of all persons and property thereon, and is held responsible for the performance of duty on the part of employés, and required to see the company's rules enforced; and in cases of gross misconduct may, if necessary, suspend any employé for the rest of the trip, reporting such action by wire and holding the train, should safety require it. Could language be more sweeping or clear? He is in absolute authority and control, with power to suspend employés, hold the train, or proceed on the trip, according to his judgment. And rule 500, as to the duty of enginemen, expressly requires them to obey orders of their conductor with respect to the general management of their trains. Rule 502 was not intended either to lessen the duty imposed upon the engineer by rule 500, or in the slightest to modify the authority of the conductor under rule 367. That they are by rule 502 made jointly responsible with the conductor for the movement and protection of their trains in accordance with the rules, is true, and are required to obey all proper orders by conductors and others as provided by the rules. They are individually responsible for observance of the rules relative to their duty, and must decline to obey any order by the conductor or any other person which involves the violation of said rules, or peril to person or property. The particular in which the engineer can decline to obey the orders of the conductor is only when to obey him would involve a violation of the rules, or peril to persons or property; then, manifestly, he should exercise his independent judgment, as in that respect the conductor stands exactly in the same relation as the general manager of the company does to him. Neither of them could require him to disobey the rules where peril to persons or property is involved. Rule 105 is but an amplification of this very idea. No person can, or should, be required to do something knowingly that involves peril to person or property, such as one would be doing if he obeyed a rule that he knew would bring about that result; and hence the last-named rule 105 says both conductors and enginemen are responsible for the safety of their trains, and under conditions not provided by the rules, must take every precaution for their protection. This is not intended to qualify the authority of the conductor in respect to the operation of the train, but is what might be termed, as is in admiralty a similar one, the "special circumstances" rule; or it may be stated in another way, as a common-sense rule, where the general rules do not cover a particular case, to do what is necessary in an emergency.

Counsel in their argument lay great stress upon the effect of rule 508, which requires that an engineman must personally comply with rule 83 in all cases, which latter rule in effect is that trains must not leave initial stations, or pass from a double to a single track, without ascertaining whether all trains due, which are superior, or of the same class, have arrived or left. Rules 375 and 376 provide especially for conductors communicating with train dispatchers, examining bulletin boards, order books, etc., provided for giving information as to the

movement of trains, and for his, the conductor's, advising the engineman of the information received; and rule 85 provides that trains must not be moved until proper signal is given. Just how far the engineman, in personally complying with rule 83, is required to go in ascertaining whether trains have arrived or left, as contemplated by the rule, is not entirely clear; but certain it is, under the facts of this case, this engineer seems to have exercised extraordinary care in that respect. He was in and about the station for some two hours. No information was given to him as to the movement of the train with which he collided, either on the bulletin board, the train register, or otherwise; nor did the telegraph operator convey to him such information. On the contrary, he was advised by the latter of the importance of hurriedly leaving Columbia, as he was by his conductor, who came fresh from the telegraph operator, with the order in his hand, and did not know of any such train as No. 828, or its whereabouts until his conductor presented order No. 23, hereinbefore recited, to him, as the train was about to move. The presence of train No. 828 being thus brought to his knowledge, he examined and read the order with the conductor, in the presence of his fireman, and inquired as to the whereabouts of No. 828, and was informed that it was in, and he thereupon pulled out, as he was specially ordered and directed to do by his conductor, then present upon his engine with him. Carson v. Railroad, 68 S. C. 55, 46 S. E. 525; Wilson v. Railroad, 73 S. C. 502, 53 S. E. 968. If he was not fully justified in obeying this specific order and direction from his conductor, the company's representative then on the engine and personally controlling its movements, certainly what he did, and whether he exercised the degree of prudence and care required of an ordinarily prudent person under like circumstances, should have been submitted to the jury for their consideration and determination.

The Supreme Court of the State of South Carolina, in the case of Wilson v. Southern R. R. Co., 73 S. C. 481, 499, 53 S. E. 968, has recently had occasion to pass upon the meaning of the very rules under consideration here, especially rules 105, 367, 368, and 502 of this defendant, and in that case determined that said rules did not operate to make the conductor and engineman of trains fellow servants; and we think that that decision is fairly conclusive of the questions under consideration here, though there the conductor was acting as pilot, as well as conductor of the train, because the engineer was not acquainted with the road. The case is entitled to special significance here, because, while it is true this conductor had not been officially designated as pilot, he assumed to act as such, as the engineman was going over this portion of the road for the first time, and, according to the engineman's statement, he promised especially to look out for him. At the very time of this accident, after signaling the train from the engine, and personally ordering its movements, he remained upon it, gave special directions as to the movement of the train, and directed its running by the first station, and until a short time before the collision.

The provision of the Constitution under consideration makes it clear that employés of railroad corporations shall have the same rights and

remedies as other citizens for injuries suffered by them by the acts. or omissions of the corporation, or its employés, when such injury results through the negligence of a "superior agent or officer," or by a person having a right to control the services of the party injured, etc. That this language removes this plaintiff from the position of a fellow servant with the conductor of his train is manifest, unless there is something in the rules of the company which would alter the status that these employés ordinarily occupy, one to the other, in the management of trains, and hence modify the meaning of the Constitution; and in this connection, it may be said, assuming that this provision of the Constitution can be avoided or qualified at all by any rule or regulation that the company may promulgate, or any undertaking that may be entered into between them and their employés respecting the liability of the railroad, certainly the provision of the Constitution ought to be given full force and effect to, considering the subject under consideration and the purpose of the legislation. It can hardly be doubted that it was ingrafted into and made a part of the organic law of the state of South Carolina because of the contrariety of construction as to who were fellow servants, and whether that question should be settled by the local or the general law. The people of the state in convention assembled determined that for themselves, which for the purpose in view made the action taken of a remedial character, and the same is entitled to that interpretation which reasonably accomplishes the object and benefit which its enactment was intended to subserve.

It is not within the power of the defendant company to so contract with its employés as to exempt itself from liability for negligence. Johnson v. R. R., 55 S. C. 152, 32 S. E. 2, 33 S. E. 174, 44 L. R. A. 645; Reed v. Railroad, 75 S. C. 162, 170, 55 S. E. 218. Nor can the defendant avoid the provisions of the Constitution on the subject of fellow servants by the adoption or promulgation of rules on the subject. Wilson v. Railroad, 73 S. C. 481, 53 S. E. 968. If this could be done, all constitutional and statutory regulation would be circumvented and quickly set at naught.

The decision of the lower court will be reversed, and the case remanded to that court with directions to set aside the judgment and verdict of the jury, and to proceed in the case de novo in accordance with the views herein expressed.

Reversed.

BOYD, District Judge, dissents.