## UNITED STATES v. DOUGLAS AIRCRAFT CO., Inc. et al.

### No. 11759.

Circuit Court of Appeals
Ninth Circuit.

Aug. 13, 1948.

James M. Carter, U. S. Atty., Clyde C. Downing, Cameron L. Lillie and Herchel E. Champlin, Asst. U. S. Attys., all of Los Angeles, Cal., for appellant.

James V. Brewer, of Los Angeles, Cal., for appellees.

Before MATHEWS, STEPHENS and ORR, Circuit Judges.

STEPHENS, Circuit Judge.

The United States brought an action to recover the sum of $10,589.61 as damages to a government owned airplane, resulting from a collision with an airplane owned and operated by Douglas Aircraft Co., Inc., Thomas W. Scott, the pilot, being joined as defendant. The jury brought in a verdict for the defendants, judgment was entered, and the United States appeals.

On November 11, 1943, at the Los Angeles Municipal Airport, Los Angeles, California, on a diagonal runway, a collision occurred between a P-51 airplane having a 37 foot wing spread, owned and operated by the plaintiff-appellant, and a S.B.D. airplane having a 42-½-foot wing spread, owned and operated by the defendant-appellees.

The airport consists of two main runways which are 300 feet wide, with macadamized strips running the length of the field, parallel to each other but separated by a clear plot of ground. Diagonally from the four corners of the field 150 feet wide, macadamized runways bisect the main runways.

At the time of the accident, the airport was managed by employees of the City of Los Angeles. The plaintiff-appellant was a tenant of the City, as was the Civil Aeronautics Authority, an agency of the Government, whose employees operated the air traffic control tower.

On the day of the accident, A. W. Pitcairn was assigned to make a test flight for plaintiff-appellant in the P-51 airplane. According to custom and usage, the air traffic control tower was informed of the test, and as customary the plane was towed to its starting point where it took off on a test flight. The plane returned to the field and landed with permission of the control tower on the main runway, 25-L, parallel to the runway 25-R. According to practice in tests, the pilot cut the motor and coasted down the runway to the intersection of the diagonal runway, turned left and parked on the right side of the diagonal runway 22 near the edge of the runway. There is conflicting evidence whether it was parked entirely within the runway or partially off the runway. Before landing, Pitcairn, the pilot, requested the tower to send a tractor to meet him and tow the plane to the parking area. He remained parked approximately ten minutes when the Douglas S.B.D. plane, piloted by Scott, collided with his plane.

Scott was employed by Douglas Aircraft Company as a test pilot. Returning to the field from a test flight and while in the air, the signal tower gave him permission to land. He landed on runway 25-R, coasted down to the diagonal runway, and turned left into the diagonal runway 22, until he was close to the intersection of the diagonal runway and the main runway 25-L. After waiting for a plane to take off from the main runway, he taxied across the main runway with permission of the tower and entered diagonal runway 22. As he was not in a position to see ahead clearly, due to the shape of the plane, he S-ed or zigzaged the plane at 15° angles, so he could see in front of his plane. He testified that he looked down the diagonal runway, but did not remember whether he actually did look all the way down it, but knew that he could see all the way down or to the end of it. According to the record it was a clear day, but there was a haze; the hills in back of the parked plane were brown or sand color and the buildings and plane were painted a brown camouflaged army color. Also, the runway was painted several colors of paint and the grass alongside was dry and brown in color. He did not see the parked plane and ran into it.

Just after the collision, according to Scott, Pitcairn said: "I am glad you cut the switch." Scott replied: "I am sorry, I didn't see you." Pitcairn replied: "I am sorry. I had no business being here. I have been here for about ten minutes. I called for a truck and they haven't come after me yet." There was conflicting evi-

dence as to whether it was customary for the traffic tower to notify pilots of obstructions on the field. No notice was given Scott as to the parked plane.

After the evidence was in, appellant made a motion for a directed verdict upon the ground that the defendant-appellee pilot was negligent as a matter of law in failing to see the parked plane before the collision, but the court declined to grant it, and submitted this issue to the jury.

Appellant contends that the failure of Scott in looking and not seeing what was in plain sight constituted negligence; plaintiff-appellant's acts did not constitute contributory negligence; before contributory negligence on the part of the appellant can be established, it must be shown that his purported negligence concurred or cooperated with the negligent act of the appellee; there was no evidence of an unavoidable accident present to warrant an instruction thereon; and the court erred in not granting the motion for a directed verdict or a new trial.

Defendant-appellees contend that Scott exercised due care under the circumstances, and that the collision was caused by the negligence of appellant's agents, the pilot of the parked plane, and the employees in the control tower. It is argued that the record shows that Scott did all that could be expected of him.

In Brinegar v. Green et ux., 8 Cir., 117 F.2d 316, 319, the court set forth a test often used: "The determination of the existence of negligence where the evidence is conflicting or the undisputed facts are such that fair-minded men may draw different conclusions from them is a question of fact for the jury and not one of law for the court." Measured by this test, we think the question of negligence was properly left to the jury.

Appellant argues that looking and not seeing something in plain sight constitutes negligence as a matter of law. It is not, however, clear that such a situation existed. We cannot say, as a matter of law, that Scott violated the duties of a reasonable man in the circumstances.

Appellant contends that there was no basis for an instruction on contributory negligence—that no evidence was present to warrant such an instruction. It is also urged that such a question was one for the court, that is, that there was no contributory negligence constituting a proximate cause of the accident as a matter of law. The reasoning urged is that the evidence is such that it is not in conflict on the facts and that from these facts reasonable men can draw but one inference. It is also argued, quoting from the brief, "Before negligence of the plaintiff can rise to the heights of contributory negligence that negligence must concur or cooperate with the negligent act of the defendant, both being the proximate cause of the injury or damage complained of."

It is stated in Basler v. Sacramento Gas & Elec. Co., 158 Cal. 514, at page 519, 111 P. 530, 532, Ann.Cas.1912A, 642, that "* * * the contributory negligence which will bar a recovery must be such as to establish that the person by failure to exercise the required amount of care proximately contributed to produce the injury complained of 'so that but for his concurring and co-operative fault the injury would not have happened' * * *."

Appellant made a motion for an instructed verdict to the effect that it was not guilty of contributory negligence, which was overruled, and appellant claims error. Appellee argues that there was ample evidence to sustain a finding of contributory negligence on the part of appellant. In Snipes v. Southern Rd. Co., 4 Cir., 166 F. 1, 5, affirming language by the Supreme Court in Richmond & Danville Rd. Co. v. Powers, 149 U.S. 43, 13 S.Ct. 748, 749, 37 L.Ed. 642, the court states: "It is well settled that, where there is uncertainty as to the existence of either negligence or contributory negligence, the question is not one of law, but of fact, and to be settled by a jury; and this whether the uncertainty arises from a conflict in the testimony, or because, the facts being undisputed, fair-minded men will honestly draw different conclusions from them."

Pitcairn's conduct plus his statement substantiating possible lack of care could lead reasonable men to draw different conclusions and thus become a ques-

tion of fact for the jury. The evidence in regard to the parked plane's position, its right to be where it was parked, and the custom and practice of the Air Traffic Tower and its duties, is in conflict. The Air Traffic Tower agency of plaintiff had authority and control over traffic, and would appear to be in the best position to take precautions for the removal of parked planes as hazards to traffic or to warn and advise appellee's pilot of the parked plane's position. Whether or not the action or non-action of the traffic tower in any instance was customary, its operation may constitute negligence. See Robinet v. Hawks, 200 Cal. 265, 252 P. 1045. Since more than one reasonable deduction can be drawn from the evidence, the issue is for the jury.

In Zibbell v. Southern Pacific Co., 160 Cal. 237, 241, 116 P. 513, 515, the court rejected an argument that the court should instruct the jury that plaintiff was contributorily negligent as a matter of law: "'It is only where no fact is left in doubt, and no deduction or inference other than negligence can be drawn by the jury from the evidence, that the court can say as a matter of law, that contributory negligence is established. Even where the facts are undisputed, if reasonable minds might draw different conclusions upon the question of negligence, the question is one of fact for the jury.'"

■ Appellant argues that the negligence proximately causing the injury must concur or cooperate with the negligence of appellees to constitute contributory negligence, and that the appellant's acts constituted the dominant cause and not merely the incidental cause of the damage. In support of that argument, appellant cites Herron v. Smith Bros. Inc., 116 Cal.App.

518, 2 P.2d 1012, 1013, wherein the court states the definition of proximate cause: "Proximate cause [is an] 'act or omission which immediately causes or fails to prevent the injury; an act or omission occurring or concurring with another which, had it not happened, the injury would not have been inflicted; the dominate cause, not one which is incidental to that cause'." Appellant also cites Thompson on Negligence.[1]

We are of the opinion that the trial judge properly instructed the jury on the proximate cause doctrine and did not ignore the above rule. Want of ordinary care on the part of appellant could have concurred as a proximate cause and not a remote cause in producing the injury, and defendant would not be liable, although in fault, and so long as this possibility existed, the trial judge did not err.

The court instructed the jury upon the subject of unavoidable or inevitable accidents. The appellant claims error because, he asserts, there is no evidence in the case from which it can be determined that the accident was unavoidable or inevitable.

■ The circumstances, other than the collision itself, are practicably without dispute. It was a clear day with haze. The pilot of the parked plane had landed at a proper place and took the precaution to pull over to the side of the landing strip, if not entirely off it. His plane was camouflaged and could well have blended almost imperceptively with the brown background. It was ten minutes from the time the pilot requested a tractor in sending a machine to pull him to the hangar before the collision, but there was considerable activity upon the field by other planes. Scott, the Douglas test pilot, landed at a proper place, looked up the landing strip, and noticing no obstruction taxied forward

---

[1] Thompson on Negligence, p. 210, § 216: "In order, then, to prevent a recovery by reason of contributory negligence, the plaintiff or person injured must have been guilty of want of ordinary care; and we shall see that this want of ordinary care must have been a proximate cause of the injury, and not a remote cause or mere condition. If the negligence of the plaintiff was only remotely connected with the injury, the plaintiff may recover damages, if notwithstanding such remote negligence of the plaintiff the defendant might have avoided the injury by the exercise of ordinary care. But if a want of ordinary care on the part of the person injured concurs as a proximate cause in producing the injury, the defendant is not liable, although in fault. * * * it must be such that, by the usual course of events, it would result, unless independent disturbing moral agencies intervened, in the particular injury."

but with the customary caution of S-ing or zigzagging his plane. These facts may well have convinced the jury that the accident happened notwithstanding all concerned used due and proper care throughout. See Eigner v. Race, 54 Cal.App.2d 506, 129 P.2d 444.

It is apparent from what we have already said that we do not agree with plaintiff-appellant's contentions that the court erred in denying its motion for a directed verdict or for a new trial or that the evidence is insufficient to sustain or support the verdict.

Affirmed.