# CASES

## ARGUED AND DETERMINED

IN THE

## UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS.

---

### SNARE & TRIEST CO. v. FRIEDMAN.

(Circuit Court of Appeals, Third Circuit. February 15, 1909.)

No. 49.

1. COURTS (§ 347*)—FEDERAL COURTS—PROCEDURE—AMENDMENTS TO CONFORM TO PROOFS.

It was within the discretion of a federal court to permit the amendment of a declaration at the close of the evidence in a case by alleging a different act of negligence on the part of defendant to conform to the evidence.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 921; Dec. Dig. § 347.*]

2. COURTS (§ 347*)—FEDERAL COURTS—PROCEDURE—MOTION TO STRIKE PLEADING.

The action of a federal court in striking out a plea of the statute of limitations before trial *held* within its discretion under the New Jersey practice, where all the facts appeared from the pleading.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 921; Dec. Dig. § 347.*]

3. LIMITATION OF ACTIONS (§ 72*)—INFANCY OF PLAINTIFF—ACTION FOR NEGLIGENCE—NEW JERSEY STATUTE.

2 Gen. St. N. J. 1895, p. 1975, § 4, provides that if any person entitled to an action for a personal injury, the bringing of which is limited by the preceding section to two years, "shall be at the time of any such cause of action accruing within the age of 21 years, * * * then such person * * * shall be at liberty to bring said action so as he * * * institute or take the same within such time as is before limited after his * * * coming to * * * full age." *Held,* that such provision authorized the bringing of an action for an injury to a minor child at any time between the accrual of the cause of action and the expiration of two years after its majority, and that the bringing of an action during minority, which was dismissed, did not start the statute to running, so as to bar another action in two years thereafter.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 398; Dec. Dig. § 72.*]

4. COURTS (§ 365*)—FEDERAL COURTS—STATE LAWS AS RULES OF DECISION—AUTHORITY OF STATE DECISIONS.

Under Rev. St. § 721 (U. S. Comp. St. 1901, p. 581), which makes the laws of the several states rules of decision in trials at common law, so

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

169 F.—1

far as the construction of the state Constitution and statutes is concerned, the decisions of the highest court of the state are controlling but upon the question as to what is the common law of the state, unless such decisions have so clearly established a settled rule in the premises as to make it a part of the peculiar and local law of that state, the federal courts exercise an independent judgment, their jurisdiction being co-ordinate with, and not subordinate to, the state court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 950; Dec. Dig. § 365.*

State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

5. NEGLIGENCE (§ 29*)—DANGEROUS STRUCTURES—DUTY OF CARE AS TO CHILDREN.

One who maintains a dangerous structure or appliance, whether on his own land or lawfully on a public highway, is under duty to use reasonable care to protect from injury, not only those of mature age, who are bound to use their faculties to protect themselves, but also children of tender years, who may without their fault become exposed to the danger.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 41; Dec. Dig. § 29.*]

6. NEGLIGENCE (§ 55*)—PILING OF MATERIAL IN STREET—LIABILITY FOR INJURY TO CHILD.

Defendant, a contractor for the building of a structure in which heavy steel I-beams were used, piled the same on the sidewalk in front of the lot, which it had the right to do with the owner's consent. Plaintiff, who was 4½ years old, was accustomed to play with other small children in the street near such piles, and they frequently climbed or sat upon the same. In some manner one of the beams became crossed diagonally over the pile where it rested in an insecure position, and the evidence tended to show had remained so for two or three days, when the children in playing caused it to fall, and plaintiff was struck by it and injured, *Held*, that defendant, having actual or constructive knowledge that the children were in the habit of playing in the street and would naturally be attracted by the piles of beams, owed them the duty to pile and keep such beams in a reasonably secure manner to prevent their falling and injuring the children, and that its failure to do so was negligence, which rendered it liable for plaintiff's injury.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 68; Dec. Dig. § 55.*]

7. NEGLIGENCE (§ 85*)—CONTRIBUTORY NEGLIGENCE—CHILDREN.

A child 4½ years old, who was injured while playing on a pile of steel beams in a street, could not by reason of her age be charged with contributory negligence, or with being a trespasser.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 124; Dec. Dig. § 85.*]

8. JUDGMENT (§ 570*)—CONCLUSIVENESS OF ADJUDICATION—JUDGMENT ON DISCONTINUANCE.

Where the plaintiff in an action in a state court for a personal injury, grounded on defendant's negligence, after a verdict in her favor and an order granting a new trial on the ground that under the facts defendant was not negligent, voluntarily discontinued the action, the judgment did not bar a second action in a federal court on the same cause of action.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1030; Dec. Dig. § 570.*

Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank of Memphis v. City of Memphis, 49 C. C. A. 468.]

9. COURTS (§ 372*)—FEDERAL COURTS—STATE LAWS AS RULES OF DECISION.

The question of liability for negligence, when not modified or governed by statute law, is one of general law, upon which federal courts are not required to follow the state decisions, although there may be such a decision based on the identical facts.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 977; Dec. Dig. § 372.*]

In Error to the Circuit Court of the United States for the District of New Jersey.

H. M. Hitchings, for plaintiff in error.
Gilbert Collins, for defendant in error.

Before GRAY and BUFFINGTON, Circuit Judges, and ARCHBALD, District Judge.

GRAY, Circuit Judge. The case brought before us by this writ of error, is as follows:

Suit was brought in the court below by the defendant in error (hereinafter called the plaintiff), against the plaintiff in error (hereinafter called the defendant), to recover for personal injuries received through the alleged negligence of the said defendant. At the time of the occurrences in question, certain persons, trading under the firm name of Colgate & Co., were the owners of lands, and the buildings thereon erected, in the city of Jersey City, in the state of New Jersey, bordering on a public street or highway of said city. The lands and buildings were located on the south side of the street, and were used and occupied by the firm for manufacturing purposes. At the time of the acts complained of, the firm was engaged in constructing an addition to its buildings, and for that purpose had contracts with the defendant, by which the defendant, among other things, was to furnish and set in place the iron and steel work for the foundation of certain tanks, including cast-iron columns and girders. The defendant, in the course of its performance of this contract, and in the furnishing, delivery, and setting in place of the cast-iron columns and girders, caused to be piled and placed certain iron girders, or I-beams, upon the sidewalk in front of the premises of the said Colgate & Co., for use, from time to time, in the prosecution of its said work. These beams were 22 feet long, 15 inches high, with flanges 4 inches wide, and weighed about 1,000 pounds each. They were, before and at the time of the accident, stored in two piles, one next to the building line and the other next to the curb line of the street, and parallel therewith, leaving a passageway on the sidewalk between the two piles. It was shown in the evidence that they could be piled so as to be measurably secure, by placing a row of three beams upon their sides, and superimposing two others so as to lock with those under them, with their flanges, and one on top locking with the two underneath; or, by placing four or five in the bottom row, and building up in the same manner. The sidewalk in front of these premises was asphalted. There was no curbing, but the asphalt pavement sloped into the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

street, forming a concave gutter, so that teams could drive from the street across the sidewalk into the premises in question.

There was some testimony in the court below, touching an alleged transfer of the original contract by the defendant to another construction company, and some controversy consequent thereupon, as to whether this company was responsible for the piling of these beams upon the sidewalk. The court below, however, correctly construed the written agreement in question as not in terms transferring the contract, and properly left to the jury the question, whether such other company was in charge of the work, or was merely in what it did the agent of the defendant. As to this, the jury has found in favor of the plaintiff, and the point may therefore be dismissed from further consideration. For the purposes of the case before us, therefore, the defendant is to be considered as an independent contractor, subject to whatever responsibilities attach to it, as such, in the prosecution of its work.

There was evidence tending to show that, at the time of the accident in question, an I-beam on the pile next to the street had become dislocated from its parallel position with the other beams, and was in a position diagonally along the side of the pile, edgeways or nearly edgeways, instead of flat, with the upper end on a piece of plank or joist, and the lower end near the bottom of the pile. It was, at all events, in a state of unstable equilibrium. Several little girls were playing about the pile, some skating on the asphalt pavement and two or more were on the pile, when the plaintiff, Fannie Friedman, 4½ years old, ran across the street to where the other girls, including her two older sisters, were playing. The testimony tends to show that she sat down on the lower end of the beam just described, and that another girl just then jumped across the upper end of the beam onto the plank on which that end was resting, causing the beam to fall over, crushing the foot of the plaintiff beneath it.

The testimony was somewhat confusing as to the exact position of the I-beam, and as to just how the accident occurred, but there can be no doubt that the beam was in a position dangerous to all who came near it, and especially to those who came in contact with it. There was evidence tending to show that this beam was in this situation, or something like it, for two or more days prior to the accident; that it was noticed by, or should have been noticed by, defendant's servants, and that it had remained in this dangerous position long enough to affect defendant with notice. There was no testimony that directly accounted for this dislocation of the beam in question. There was testimony tending to show that these piles had been in place for several weeks, and that a short time before the accident, the number of beams on the pile was less than formerly. How this particular beam came into its dangerous position, was a matter, therefore, of conjecture. Whether it had been dislocated from its original position by taking other beams from the pile, for use in the structure under erection, or had been partly moved for the purpose of such use, and then temporarily abandoned, it is not necessary here to determine, even if it were capable of being determined. The evidence as to its dangerous situation, and its existence in that situation for two or

more days before the accident, was properly submitted to the jury, and there can be no objection to the charge of the court in that regard.

The charge of negligence principally insisted upon at the trial was, not for the original careless piling of the beams, as was charged in the declaration, but for the maintaining of the pile in the dangerous condition testified to after notice of such condition, or after a long enough time had elapsed for notice to be presumed. After the conclusion of the evidence, the learned judge of the court below permitted an amendment to the plaintiff's declaration, charging the defendant with negligence in the latter respect. The defendant excepted to this action of the court and assigned the same as error. We may dispose of it in passing, however, by saying that the action of the court appears to us to have been the exercise of a sound discretion, and not to have transcended the liberal rules in regard to amendments to pleadings which obtain in the practical administration of justice. There was also testimony admitted over the objection of the defendant, tending to show that the asphalt pavement on the north side of the street, near the Colgate factory and these piles, was much resorted to by children of the neighborhood for roller skating and other plays, and that these piles were attractive to such children, as evidenced by the fact that they constantly played thereon, to the knowledge of the defendant. Under the laws of New Jersey, Colgate & Co. were the owners of the fee of the street to its center, subject to the public easement for purposes of travel, and it is not disputed that either by state law or municipal ordinance, they, or their subcontractor by their permission, had the right to a reasonable use of the sidewalk, temporarily, for the storing of material to be used in building, or repair of buildings, on their adjoining property.

The learned judge of the court below instructed the jury, in effect, that not only was the defendant bound to exercise ordinary care in originally piling these girders upon the street, but also in maintaining the piles so that they might not endanger the safety of those lawfully using the sidewalk, and that, if from the weight of the evidence the jury found that the girders so piled on the sidewalk were, at the time of the accident, calculated to tempt and attract little children accustomed to play on the street, to use them for play or rest, and that this was known to the defendant, then, if one of the beams, though originally secure in the pile, became dislocated and was allowed to remain in the dangerous position described in the testimony, for a time long enough to presume notice to the defendant, it became responsible for the damage caused to the plaintiff, who was without fault. A verdict was found for the plaintiff, and upon the judgment entered thereon, this writ of error was sued out.

The assignments of error are very numerous, but they are for the most part covered by the few principal contentions urged at the bar, upon the determination of which the case must turn. The first contention to be noticed is, that the court erred in striking out before the trial, and against the objection of the defendant, the plea of the statute of limitations, and in holding that it was not available to the plaintiff in error. Brief notice only is required of defendant's point, that it had an absolute right to interpose said plea and have it dis-

posed of when it was sought to be availed of during the trial, and that the action of the court, in striking it out before trial, was contrary to the rules of practice and procedure in New Jersey. We think, however, that the granting of the motion to strike out was a matter within the discretion of the court below. All the facts bearing upon the availability of the pleading were stated in the plaintiff's declaration. Even if the granting of the motion to strike out was at variance with practice and procedure in such cases, no possible harm could come to the defendant by reason of such premature striking out as by the law of the state the action of the court in the premises was reviewable, at whatever state of the trial it was had.

This brings us to the substantial question raised by this assignment of error, whether the action brought by the plaintiff was, under the facts set forth in the pleadings, barred by the statute of limitations of the state of New Jersey. The relevant portions of that statute are as follows:

"All actions hereafter accruing for injuries to persons caused by the wrongful act, neglect or default of any person or persons, firm or firms, individual or individuals, corporation or corporations within this state, shall be commenced and instituted within two years next after the cause of such action shall have accrued, and not after." 2 Gen. St. N. J. 1895, p. 1975, § 3, as amended by Laws 1896, p. 119.

Section 4 (same statutes and page) reads:

"That if any person or persons who is, are or shall be entitled to any of the actions specified in the three preceding sections of this act, is, are, or shall be at the time of any such cause of action accruing within the age of twenty-one years, or insane, that then such person or persons shall be at liberty to bring said action so as he, she or they institute or take the same within such time as is before limited, after his, her, or their coming to or being of full age or of sane memory as by other person or persons having no such impediment might be done."

It appears from the pleadings that the plaintiff, Fannie Friedman, then being between the ages of four and five years, brought an action in the state court of New Jersey, in 1903, shortly after the accident, which, after a verdict in her favor and pending a motion for a new trial, was, for reasons that will hereafter appear, discontinued, and that the present action was begun in January, 1906, two years and six months after the former action, and when the plaintiff was something over six years of age. The contention of defendant's counsel is:

"That an infant may remain quiescent after the cause of action accrues, until majority, and may then bring and maintain the action within two years thereafter, or he may bring his action as an infant, issue a summons in the infant's name, and apply thereafter for the appointment of a next friend to prosecute the action so brought, but, in this case, immediately upon the commencement of his action, he sets the statute running and assumes the same legal position as one of full age."

We cannot agree with this construction of these sections of the New Jersey statute. The learned judge of the court below was of opinion that:

"A proper construction of these sections of the New Jersey statute allows the infant all the time intervening between the accrual of the cause of action

and its majority, plus a period thereafter equal to the prescribed limitations of the statute."

In the case of Smith v. Felter, 61 N. J. Law, 104, 38 Atl. 746, Mr. Justice Gummere, of the Supreme Court of New Jersey, in discussing section 4 of the statute, as above quoted, says:

"It seems to me clear that the effect of this provision is to stay the running of the statute while the disabilities mentioned therein continue to exist, and that a party suffering from any of such disabilities may maintain an action at any time during their continuance, or within the six years afterward."

This is practically the opinion of the learned judge of the court below. There can be no doubt that one who was under no disability could bring such an action as we have here, at any time within the limitation of two years prescribed by the statute, discontinue it, and bring another action, provided it also be within the period of limitation. We can see no reason why an infant under 21 years of age, against whom the statute is not running at all, should not be able to do the same thing, that is, bring an action, discontinue the same, and bring another or successive actions during his minority. We can find nothing in the express words of the statute, or in any reasonable interpretation thereof, that justifies the contention of the defendant, as above stated, and no case in the state of New Jersey or elsewhere has been called to our attention which supports the same.

This brings us to the important question in the case, viz., whether defendant owed any duty to the plaintiff for neglect for which it should be held responsible to her in this action. In its consideration, we assume (1) that the defendant, as an independent contractor with the owner of the premises, might lawfully use such portions of the sidewalk of the public street as it actually did use, for the temporary storage of the I-beams in question, or other material to be used in the structures it had contracted to erect; (2) that defendant, being responsible for placing the I-beams on the street and maintaining them there, owed a duty to the public, including the defendant, to place and maintain them with reasonable care, so that those lawfully on the street, and without fault on their part, might not be injured thereby.

Conceding all this for the sake of argument, defendant denies liability, by reason of the premises, contending that plaintiff was at fault (1) in that she was an active trespasser upon the girders at the time she received her injury, the trespass contributing thereto; (2) in that she was playing upon the girders at the time of the injury, and not using the sidewalk for purposes of travel, and that such playing contributed to the injury complained of; (3) in that the use which she was making of the girders at the time the injury occurred, was unlawful, and therefore defendant owed no duty to her.

The foregoing, of course, are different forms of the same contention. It may be admitted that if one, sui juris, had, in using this sidewalk, without reasonable excuse stepped upon the pile of beams while in this condition, and had been injured by the falling of the displaced beam in the manner described, defendant would not have been liable therefor, on the ground of such person's contributory neg-

ligence, or possibly on the ground that defendant owed no duty to one who might be considered a trespasser, to see that the pile of beams was properly constructed. The defendant, however, ignores the distinction which we think is inherent in this case, between those who are and those who are not sui juris, or rather between those who have and those who have not arrived at years of discretion. In the case before us, it is not necessary to consider at what age an infant may be of such discretion as to be responsible in a case like the present for contributory negligence, or for conduct which, in case of sufficient discretion, would make him or her a trespasser. Fannie Friedman, the plaintiff, at the time of the accident, was only 4½ years old, and there can be no question that, in the eyes of the law, by reason of her age, she lacked that discretion which would make her responsible for her conduct. She was legally incapable of contributory negligence, or of being a trespasser. The question then arises, whether defendant owed to such a child, under the circumstances disclosed by this record, any duty other than that owed to those who were sui juris, or who at least had arrived at years where discretion may be presumed. We think there was a peculiar duty of this kind incumbent upon the defendant, in relation to this plaintiff, under the circumstances of this case. Why should not one who has a dangerous structure or appliance, whether on his own land, or lawfully on a public highway, use ordinary care to protect, not only those who are able to protect themselves by the use of their faculties, and who are bound to make such use of them as the ordinary experience of mankind justifies us to expect, but also those of such tender years, as may without fault on their part come within the danger to which the owner of such appliance or structure has exposed them? We think, in reason and in consonance with the legal principles by which the duty of individuals to protect others from the dangers that may result from the use of their own property is determined, and by which they are held responsible for their negligent acts in that regard, this defendant owed a duty to the children of tender years who, to its knowledge, were accustomed to play on the public street in the vicinity of these piles of beams, and also to play and sit thereon, to use due care under the circumstances to prevent the piles from being in such an unstable condition as would be likely to cause injury to such of these children as might come in contact therewith. Peirce v. Lyden, 157 Fed. 552, 85 C. C. A. 312.

In charging the jury upon this branch of the case, the learned judge of the court below said:

"I shall adopt the language of the late Judge Dixon, who charged the jury in a suit between those same parties when it was on trial in the Supreme Court of this state [New Jersey]. Speaking of the public, he said:

" 'The public consists of two classes for the present purpose of this suit: People grown up, adults, people come to years of discretion, and the little children, who have not yet come to years of discretion, who have not yet the ability to take care of themselves as older people do, and the law regards their rights and privileges in the streets as well as those of older persons, and when you are dealing with the safety of things left in the streets, you have to regard children as well as older people. The propensity of little children to play upon the street and to rest from their play in the public

streets, is one with which we are all more or less familiar, and that is also to be taken into consideration (and I may say by way of parenthesis that upon this trial there is evidence tending to show that little children were accustomed to play in the street in the vicinity of where the girders were placed both before and after they were placed), and if things are left in the street in such condition that they will tempt children to make use of them, either for play or for rest, and will be dangerous to little children if they do so make use of them, those things are not in proper condition.' "

This statement of the legal duty resting upon those in the situation of the defendant, we think is as sound as it is humane, and it is supported by decisions of the Supreme Court of the United States, as well as by numerous decisions of the state courts. These decisions are controlling in the present case. The leading case of Railroad Company v. Stout, 17 Wall. 657, 21 L. Ed. 745, was a case in which the plaintiff, a child of tender years, was injured while playing with other children on a railroad turntable. This turntable was ordinarily held secure from movement by a heavy cast-iron latch. This latch had been for some time broken, so that the table could be easily turned on its pivot by the children who played on and near it. The turntable was on the uninclosed land of the railroad company. There was evidence tending to show that small children were in the habit of playing around and upon this turntable, to the knowledge of defendant's servants. Dillon, Circuit Judge, in the court below, had, in charging the jury on the question whether there was negligence on the part of the railroad company, in allowing the turntable to remain in the condition in which it was, said:

"That to maintain the action it must appear by the evidence that the turntable, in the condition, situation, and place where it then was, was a dangerous machine, one which, if unguarded or unlocked, would be likely to cause injury to children; that if in its construction and the manner in which it was left it was not dangerous in its nature, the defendants were not liable for negligence; that they were further to consider whether, situated as it was on the defendant's property in a small town, somewhat remote from habitations, there was negligence in not anticipating that injury might occur if it was left unlocked or unguarded; that if they did not have reason to anticipate that children would be likely to resort to it, or that they would be likely to be injured if they did resort to it, then there was no negligence."

The Supreme Court approved of this statement of the law, and decided that the case had been properly submitted to the jury. The principle of this case has been adhered to by the Supreme Court, in subsequent cases, as also by many cases in the highest courts of the states, and though there is some conflict in the decisions of the state courts, the decided weight of their authority is on the side of what has come to be called the "Doctrine of the Turntable Cases."

In Union Pacific Ry. Co. v. McDonald, 152 U. S. 262, 14 Sup. Ct. 619, 38 L. Ed. 434, the railway company operated a coal mine, and was in the habit of depositing the slack on an open lot belonging to it, between the mine and the station, in such quantities that the slack was in a permanent state of combustion, a fact known to the servants of the company. The lot was open and unguarded. A lad of 12 years of age, in running across this lot, fell onto the slack and was badly burned. It was held that the lad was not a trespasser, under the circumstances, and had not been guilty of contributory negli-

gence, and he was allowed to recover. Mr. Justice Harlan, in deliv-
ering the elaborate opinion of the court in this case, approves of the
judgment in Railroad Company v. Stout, and quotes with approval
the following from Judge Dillon's charge to the jury in that case:

"The machine in question is part of the defendant's road and was lawfully
constructed where it was. If the railroad company did not know, and had
no good reason to suppose, that children would resort to the turntable to play,
or did not know, or had no good reason to suppose, that if they resorted there
they would be likely to get injured thereby, then you cannot find a verdict
against them. But if the defendants did know, or had good reason to believe,
'under the circumstances of the case, that the children of the place would
resort to the turntable to play, and that if they did they would or might be
injured, then, if they took no means to keep the children away, and no means
to prevent accidents, they would be guilty of negligence, and would be answer-
able for damages caused to children by such negligence."

Mr. Justice Harlan then proceeds, as follows:

"That charge was held by this court to be an impartial and intelligent one.
And after observing that the jury were at liberty to find for the plaintiff, if
from the evidence it could justly be inferred that the railroad company, in
the construction, location, management, or condition of the turntable, had
omitted that care and attention to prevent the occurrence of accidents which
prudent and careful men ordinarily bestow, Mr. Justice Hunt, delivering the
unanimous judgment of this court, said:

" 'That the turntable was a dangerous machine, which would be likely to
cause injury to children who resorted to it, might fairly be inferred from
the injury which actually occurred to the plaintiff. There was the same
liability to injure him, and no greater, that existed with reference to all
children. When the jury learned from the evidence that he had suffered a
serious injury by his foot being caught between the fixed rail of the roadbed
and the turning rail of the table, they were justified in believing that there
was a probability of the occurrence of such accidents.' "

That this is recognized as the common law by the English courts is
shown by Mr. Justice Harlan's discussion of the cases of Lynch v.
Nurdin, 1 Q. B. 29, 36, Mangan v. Atterton, L. R. 1 Ex. 239, and
Clark v. Chambers, L. R. 3 Q. B. D. 327. See Pollock on Torts, *382,
*383. The doctrine of those cases which relate to structures danger-
ous, as well as attractive, to children, maintained on defendant's own
land, is a fortiori applicable to cases like the present, where the de-
fendant has maintained the dangerous thing, structure or condition
upon a public street or highway.

The defendant, however, earnestly contends that the decision of the
Court of Errors and Appeals of New Jersey, in Friedman v. Snare
& Triest Co., 71 N. J. Law, 605, 61 Atl. 401, 70 L. R. A. 147, 108
Am. St. Rep. 764, is binding upon the court below and this court, and
settles the law for this case. This contention involves the important
question of how far decisions of a state court are conclusive upon the
Circuit Courts of the United States, in the exercise of their concur-
rent jurisdiction with state courts. This question has received the con-
sideration from the Supreme Court, which its importance demanded.
It is unnecessary to cite all the decisions in which that court has
enunciated the principles by which determination of this question must
be guided. These decisions have been founded upon the broad mean-
ing and intent of article 3 of the Constitution, and of the legislation
of Congress in pursuance thereof, conferring upon the Circuit Courts

of the United States "original cognizance concurrent with the courts of the several states, of all suits of a civil nature at common law or in equity * * * in which there shall be a controversy between citizens of different states," and have been made in conformity to that spirit of comity and practical good sense by which, in the administration of this concurrent jurisdiction, "unseemly conflicts" with the state courts have been avoided. These principles, for our present purpose, may be summarized as follows:

There is no common law of the United States, and the thirty-fourth section of the judiciary act (Act Sept. 24, 1789, c. 20, 1 Stat. 92), as embodied in section 721 of the Revised Statutes (U. S. Comp. St. 1901, p. 581), provides:

"That the laws of the several states, except where the Constitution, treaties, or statutes of the United States otherwise require or provide, shall be regarded as rules of decision in trials at common law, in the courts of the United States, in cases where they apply."

So that, in any trial at common law, a Circuit Court of the United States, where its jurisdiction is founded on diverse citizenship, has to inquire what the law of the state in which its jurisdiction is exercised may be, and it is the law of that state, whether statute or common law, that it is called upon to administer. So far as the constitutional or statute law of a state is concerned, the Constitution and statutes speak for themselves, and it is a rule well settled, that where a question arises upon the construction of a state Constitution or statute, the courts of the United States will feel themselves bound by the construction given to them by the Supreme Court of the state. So, also, as to what may be the common law of the state, as applicable to a case before a federal court, the ordinary evidence is to be found in the decisions of the state's tribunal of last resort.

The question in the class of cases we are now considering, being what the law of the state is, which is to be administered by the court, if there can be found in the decisions of the highest court of that state intrusted with the construction of its statutes, and the interpretation and application of its common law, a well settled rule, that generally will be deemed the law of that state. Especially is this true, whenever the decisions of the state courts relate to some law of a local character, which may have become established by those courts as part of the law of the state. And generally, where in an ordinary trial, in an action at common law in a United States court, we speak of the common law, we refer to the common law of the state as it has been adopted by statute or recognized by the courts, as the foundation of legal rights, so that, though a United States Circuit Court, having jurisdiction in a given state, is an independent forum, and distinct from that of the state, it administers no new or different law from that administered in the state court. But the jurisdiction exercised by those federal courts in such cases, is concurrent and not subordinate, and they are called upon to exercise, and do exercise, an independent judgment as to what the law of the state may be.

As to the constitutional and statute law of a state, and the construction given thereto by the highest state tribunals, there is little

or no difficulty. And as to what the common law of a state may be, the best evidence is generally found in the settled line of decisions of the state court, so accepted and recognized as to constitute a general rule of property or conduct. More latitude, however, is practiced in questions that depend upon a common law, not merely part of the local and customary law of the state, but common to all states and countries where what is known as the "common law" prevails. On these questions, the courts of the United States do not hold themselves bound by the decisions of the courts of the state, unless, perchance, such decisions have so clearly established a settled rule in the premises as to make it part of the peculiar and local law of that state. In deciding what the common law of a state may be, they will resort to the same sources of information as are open to the state courts, and find the evidence of the law where the state courts must seek it, in that general jurisprudence of which we have spoken. State courts are accustomed, in discussing such questions, to refer, not only to decisions of their own states, but to those of other states in this country, as well as to decisions in that country from which we originally derived the common law. The Circuit Courts of the United States may, therefore, in forming their independent judgment, in questions where the common law of the state is derived from the principles of general jurisprudence common to all the states, at times feel compelled to differ from the conclusions arrived at by the state court. In other words, they may differ from a state court in determining what the common law of the state, thus derived, and applicable to the given case, may be. Swift v. Tyson, 16 Pet. 1, 8, 10 L. Ed. 865.

It is to be remembered, however, that this diversity of opinion will not be indulged in by the courts of the United States, where, as we have just said, in the ordinary administration of the law by the state courts, and by the settled course of their decisions, certain rules are established which have become rules of property and conduct in the state, and have all the effect of law, which it would be wrong to disturb. Burgess v. Seligman, 107 U. S. 20, 37, 2 Sup. Ct. 10, 27 L. Ed. 359; Bucher v. Cheshire R. R. Co., 125 U. S. 555, 8 Sup. Ct. 974, 31 L. Ed. 795; Etheridge v. Sperry, 139 U. S. 267, 275, 11 Sup. Ct. 563, 35 L. Ed. 171.

This contention makes it necessary to refer to the somewhat peculiar history of the litigation between the parties to this suit, as disclosed in the record. From the facts stated in the fifth plea filed by the defendant, and afterwards stricken out by the court upon motion of the plaintiff, it appears that the defendant in error, Fannie Friedman, and her father, Samuel Friedman, on July 20th, 1903, brought two separate actions against the present plaintiff in error, in the Supreme Court of New Jersey, to recover damages for the same injury and upon the same state of facts for which the present action was brought in the court below. The two actions came on for trial, and by stipulation and consent were tried as one before a justice of the Supreme Court and a jury. A verdict was rendered in favor of Fannie Friedman for $7,000, and for Samuel Friedman, who sued per quod servitium amisit, for $800. On the judgment in the case of Samuel Friedman, a writ of error was sued out by the de-

fendant company, from the Court of Errors and Appeals of the state of New Jersey, and in Fannie Friedman's case a judgment nisi being entered, a rule to show cause why the verdict should not be set aside was granted, returnable before the New Jersey Supreme Court. The Samuel Friedman case was duly argued before the said Court of Errors and Appeals, and the judgment appealed from was finally reversed. The ground of this reversal, as stated in the opinion of the court, was that the defendant company owed no duty to the children of tender years to whom, to its knowledge, these piles of beams might be attractive for playing upon or resting upon, to keep them in a reasonably safe condition, other than it owed to those who were sui. juris. It was held that Fannie Friedman was a trespasser upon these materials of the defendant, and that for the injury suffered by her, as such, no cause of action or recovery could accrue to her father.

After this judgment of the Court of Appeals, in the case of Samuel Friedman, as was inevitable, the rule to show cause why a new trial should not be granted in the case of the infant plaintiff against the same defendant, was made absolute by the trial court, and the suit was thereafter discontinued by plaintiff, and a new action was brought in the court below, the judgment and record in which, by writ of error, are now before this court for review. The objection made by plaintiff in error, that the suit in the state court barred the right of action in the second suit in the United States court, does not seem to have been seriously pressed, and requires but a word in passing. Manhattan Life Ins. Co. v. Broughton, 109 U. S. 121, 3 Sup. Ct. 99, 27 L. Ed. 878, was a case where a nonsuit in the state court had been granted on defendant's motion and a new action was subsequently instituted in the Circuit Court of the United States, where it was contended that the former judgment was a bar and a request made to direct a verdict for defendant. The court denied the request and overruled the objection. Upon error to the Supreme Court, these rulings were held to be correct, and that "a trial upon which nothing was determined cannot support a plea of res judicata or have any weight as evidence at another trial." And in Gardner v. Mich. Cent. R. R. Co., 150 U. S. 349, 14 Sup. Ct. 140, 37 L. Ed. 1107, the plaintiff sued defendant in the state. court of Michigan, and a verdict and judgment were. in plaintiff's favor. This judgment was reversed by the Supreme Court of the state, and a new trial ordered. When the case was remanded, plaintiff voluntarily withdrew his action, and then commenced suit in the Circuit Court of the United States, on the same cause of action. The defendant contended that the plaintiff was precluded from bringing this action by the judgment in the state court, rendered for the same cause of action and on the same state of facts. This contention was overruled by the Circuit Court of the United States, and the Supreme Court of the United States, in the case cited, held that this ruling of the Circuit Court was correct.

We recur, therefore, to the contention that the decision of the Court of Errors and Appeals of New Jersey, in Friedman v. Snare & Triest, is binding on this court, and settles the law for this case. We have already stated at sufficient length the principles that should guide this

court in determining how far it should consider itself bound by this decision of the Court of Errors and Appeals of New Jersey. The question, whether the defendant owed any duty, as respected the children of tender years on said street and near said piles of beams, which to the knowledge of the defendant had proved attractive to such children to rest or play upon, other than and different from that which it owed to persons using the street and who were sui juris, was clearly a question of the common or unwritten law of the state of New Jersey. It was not a question of statute law, or of title to land, or of merely local law or custom, but belonged to that domain of jurisprudence to which we have above alluded, which prevails generally in all states and countries where the common law is recognized, and is so often referred to in the decisions of the Supreme Court. It is well settled that the general question of liability for negligence, when not modified or regulated by statute law, belongs to this domain. In Gardner v. Mich. Cent. Railroad Co., supra, Chief Justice Fuller, in speaking for the Supreme Court, says:

"But in the present case, only the responsibility of a railroad company to its employés was involved, and it is settled that that question is a matter of general law, and that in the absence of statutory regulations by the state in which this cause of action arose, this court is not required to follow the decisions of the state court. Railroad Co. v. Lockwood, 17 Wall. 357, 21 L. Ed. 627; Hough v. Railway Co., 100 U. S. 213, 25 L. Ed. 612; Myrick v. Mich. Cent. R. R., 107 U. S. 102, 1 Sup. Ct. 425, 27 L. Ed. 325; Lake Shore, etc., Ry. v. Prentice, 147 U. S. 101, 13 Sup. Ct. 261, 37 L. Ed. 97; B. & O. R. R. Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772."

In ascertaining what this unwritten or common law prevailing in New Jersey, as well as widely elsewhere, requires in the premises, the court below had the right to exercise its independent judgment. In doing so, it might explore the sources, and scrutinize the evidence, of that law precisely as the state court has done. However reluctant it may be to differ with, it was not bound by, the decision of the state court in such a case, although judicial comity might require it to bow to a line of decisions so uniform and well settled, and extending through so long a time, as to establish a rule of conduct which "it would be wrong to disturb." The only question, then, is, was the judgment of the Court of Errors and Appeals of New Jersey, in the case referred to, declaratory of a rule of law so established as to be peculiar to that state? In accordance with the principles above stated, its decision that the title of the abutting owners on a street in New Jersey extend to the middle thereof, subject to the public easement, and that by the law of that state such abutting owners have the right to the temporary and reasonable use of the street for storing materials to be used in building and repair of structures on such abutting land, as a matter of local law, should be and was respected as conclusive by the Circuit Court, especially as its decision in this respect was supported by the authority of a uniform line of state decisions.

With reference, however, to the general question of negligence, and the duty owed under the circumstances by defendant to plaintiff, the only New Jersey cases referred to by the learned justice who delivered the opinion of the Court of Errors and Appeals are the cases of

Turess v. N. Y., Susq. & West. R. R. Co., 61 N. J. Law, 314, 40 Atl. 614, decided by the Supreme Court, and D., L. & W. R. Co. v. Reich, 61 N. J. Law, 635, 40 Atl. 682, 41 L. R. A. 831, 68 Am. St. Rep. 727, decided by the Court of Errors and Appeals.

The case first cited was in the Supreme Court, not the court of last resort. It was a turntable case, and squarely took issue with the doctrine of Railroad Company v. Stout and the "Turntable Cases," so called, that have followed it. The case was decided in 1898, and it was said by Chief Justice Magie, who rendered the opinion, that the question was for the first time presented for consideration to the courts of New Jersey.

The second case was in the Court of Errors and Appeals, and was also a turntable case. Mr. Justice Gummere, in delivering the opinion of the court, in speaking of the doctrine of the "turntable cases," says that:

"Although this doctrine has received the support of many courts of high distinction, it has been absolutely repudiated by other courts whose decisions rank equally high."

He also says that "this court," the Court of Errors and Appeals, "has up to the present time never been called upon to decide the question, and we are free to adopt either the view taken by the United States Supreme Court, in Railroad Company v. Stout, supra, and the cases which have followed it, or that taken by" other courts. It was accordingly held by the court that the owner of the turntable and of the land on which it was built, owed no duty to a child of tender years, who was hurt by playing thereon, on the ground that it was a trespasser at the time of the accident.

In addition to these, counsel for the plaintiff in error has referred us to the cases of Isaac S. Vanderbeck v. Hendry, 34 N. J. Law, 467, Fitzpatrick v. Cumberland Glass Co., 61 N. J. Law, 376, 39 Atl. 675, and Taylor v. Haddonfield & C. Turnpike Co., 46 Atl. 707. These cases all refer to the duties of landholders, with reference to persons sui juris who enter upon their lands as licensees, and do not at all touch the question with which we are here concerned. It is evident, therefore, that there is no such settled rule of law established by the decisions of the New Jersey tribunal of last resort, as would be binding upon the United States Circuit Court or relieve it from the duty of forming an independent judgment as to what the unwritten or common law of New Jersey required of the defendant in the premises. That the law was not so settled in New Jersey, is further evidenced by the strongly reasoned dissenting opinion of Fort and Bogert, JJ., in the case of Samuel Friedman v. Snare & Triest Co., supra, and by the view taken by that eminent jurist, the late Mr. Justice Dixon, in the trial of this same case in the Supreme Court, and whose opinion, as approved by the learned judge of the court below, we have already quoted. With the highest respect for the Court of Errors and Appeals of the state of New Jersey, and for the learned members of that court who announced its opinion in the case referred to, we are compelled to the conclusion that the rule of law, as announced in the case of Railroad Co. v. Stout, supra, and in the subsequent approving cases, is the law applicable to

the present case, and the assignments of error in that regard must be overruled.

It is only necessary in conclusion to refer briefly to the contention of the plaintiff in error, that because the case of Samuel Friedman v. Snare & Triest Co., in the Court of Errors and Appeals of New Jersey, grew out of the identical facts and circumstances upon which the present case is founded, it was in some peculiar sense binding upon this court, as well as upon the court below. In view of what has already been said, we can give no weight to this suggestion. It still remains a matter in which two courts of concurrent and independent jurisdiction have arrived at a different view of the law.

In the case of Bucher v. Cheshire R. R. Co., 125 U. S. 555, 8 Sup. Ct. 974, 31 L. Ed. 795, the plaintiff in error was plaintiff below in the Circuit Court of the United States, and sought to recover from defendants for injuries which he sustained by reason of their negligence, while traveling upon their roads. The court on the trial substantially instructed the jury that the plaintiff could not recover, because the injury complained of occurred while he was traveling upon the Sabbath day, in violation of the law of the state of Massachusetts. A suit between the same parties in regard to the same transaction had been brought in the Supreme Court of that state, in which, on a trial before a jury, the plaintiff obtained a verdict. This was carried to the court in banc, and was there reversed and sent back for a new trial. The plaintiff then became nonsuit in the state court, and brought his action in the Circuit Court of the United States. Mr. Justice Miller, in delivering the opinion of the Supreme Court, discussed the general question as to the binding effect of decisions of the state courts upon the courts of the United States, and we have already cited a passage from his opinion. He nowhere, however, gives any weight to the fact that there had been an opinion of the Massachusetts court of last resort, in the very case then before the Supreme Court, but confines himself to the inquiry, whether any settled rule in the premises had been established by the decisions of the Massachusetts courts. He concludes as follows:

"The decisions on this subject by the Massachusetts court are numerous enough and of sufficiently long standing to establish the rule, so far as they can establish it, and we think that, taken in connection with the relation they bear to the statute itself, though giving an effect to it which may not meet the approval of this court, they nevertheless determine the law of Massachusetts on that subject."

In the case at bar, no statute of the state was involved.

As we have seen in the case of Gardner v. Michigan Cent. R. R. Co., supra, there was the same situation to be dealt with. The Supreme Court of the United States refused to be bound by the decision of the Supreme Court of Michigan, on the same facts and between the same parties, and said:

"We conclude, therefore, that the opinion of the state Supreme Court should be given only such weight as its reasoning and the respectability of the source from which it proceeds entitles it to receive."

Nearly all the other contentions founded upon the assignments of error are disposed of by what we have already said, and as to those

that are not so disposed of, we content ourselves with saying that they are without merit and present no reversible error. We think the questions we have discussed were properly submitted to the jury by the learned judge of the court below, and the judgment below is therefore affirmed.